Marion C. BOWMAN, Appellant,

v.

UNITED STATES of America, Appellee.

No. 19336.

United States Court of Appeals Ninth Circuit.

Sept. 8, 1965.

Rehearing Denied Oct. 12, 1965.

---

3. Woods Construction Co. v. Pool Construction Co., 10 Cir., 314 F.2d 405.

Vincent Hallinan, Carl B. Shapiro, Patrick Sarsfield Hallinan, LeRoy W. Rice, San Francisco, Cal., for appellant.

John W. Bonner, U. S. Atty., Merlyn H. Hoyt, Asst. U. S. Atty., Reno, Nev., for appellee.

Before CHAMBERS, HAMLEY and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

This appeal is from a judgment of conviction, entered upon the verdict of a jury, under an indictment charging in one count that Bowman and six others conspired, in violation of 18 U.S.C. § 371, to violate 18 U.S.C. § 2314, interstate transportation of stolen goods, and in a second count charging that Bowman and four of the same six committed the substantive offense, in violation of 18 U.S.C. §§ 2 and 2314. Bowman was sentenced to five years and a fine of $10,000 on the first count, and to ten years on the second count, the two prison terms to run concurrently. He appeals.

The principal contention is that the court erred in overruling a claim of privilege against self-incrimination asserted by the witnesses Reves and Davie. Both of them were indicted, along with Bowman and others, on both counts. Davie pleaded guilty and Reves was convicted at a previous trial. When Davie took the stand he attempted to assert the privilege against self-incrimination on the ground that his testimony would incriminate him with the state (presumably the State of Nevada where the principal offense was committed). The court ruled that this was not a ground for assertion of the privilege and ordered Davie to testify, which he did. Reves, when called, also attempted to assert the privilege. He claimed that he might be incriminated under both federal and state laws. The court overruled the claim as it related to state laws and determined that there were two Federal Acts under which Reves might possibly incriminate himself, the Dyer Act, 18 U.S.C. § 2312, and the statute punishing interstate fraud by wire (18 U.S.C. § 1343). Whenever any question was asked which the court thought might be incriminating under either Act, the claim of privilege was sustained, often at the court's suggestion, rather than that of the witness. Otherwise, however, the claim was overruled, and the witness

was ordered to testify, which he then did.

Neither witness undertook to test the validity of the court's rulings by standing upon his claim of privilege and refusing to answer. Bowman's counsel did not at any time object to Davie's testimony on the ground that the court improperly overruled his claim of privilege. When Reves attempted to assert the privilege, counsel for a co-defendant attempted to make a statement which the court refused to hear.[1] Later, however, the court did hear him, out of the presence of the jury, and he stated that he felt that the witness ought to have an opportunity to consult with his counsel. The witness stated that he had consulted with his counsel who told him "to take the Fifth Amendment." The court explained that this phrase, standing alone, was meaningless, stating:

> "THE COURT: Just to say take the Fifth Amendment, there is no such thing as taking the Fifth Amendment. You may say, 'I swear on my oath,' in substance, 'that the question just asked me calls for an answer which might tend to incriminate me under some Federal law.' Now, any time you feel there is such a question—of course, I assume your lawyer will tell you that if you think the court rules wrong on it then you are at your peril; you can either answer or you can stand and say 'No,' and risk contempt. That is the only thing that is open to you."

Following further colloquy, the witness said:

> "THE WITNESS: That is the reason I wanted to be represented by counsel, to talk with counsel, so he could advise me which questions would be incriminating and which would not."

The witness then stated that his lawyer was in Hot Springs, Arkansas, so that he could not consult him, and the court inquired if he wished to consult one of counsel for the defendants. The witness said he would, that he would like to talk to an attorney, and the court said that he could. After considerable further discussion, the court instructed the Marshal to make the witness available for consultation with counsel at any time convenient, including a recess which immediately followed. The witness then continued to testify without further objection.

At the time that the court made its ruling (October, 1963), its statement, that the privilege did not protect a witness in a federal court from giving testimony which might incriminate him in one of the states, was correct. United States v. Murdock, 1931, 284 U.S. 141, 52 S.Ct. 63, 76 L.Ed. 210. The Murdock case, however, was overruled in June of 1964 in the case of Murphy v. Waterfront Commission, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678. Thus under the current state of the law the court's ruling was undoubtedly erroneous.

 This, however, does not entitle Bowman to a reversal. It has long been settled that the privilege against self-incrimination is personal to the witness. (Hale v. Henkel, 1906, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652; McAlister v. Henkel, 1906, 201 U.S. 90, 26 S.Ct. 385, 50 L.Ed. 671; United States v. Murdock, supra; United States v. White, 1944, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542; Rogers v. United States, 1951, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344; Communist Party of United States v. Subversive Activities Control Board, 1961, 367 U.S. 1, 81 S.Ct. 1357, 6 L.Ed.2d 625.) It is equally well settled that the witness can waive the privilege. Thus if Davie and Reves had each failed to assert the

---

1. As in most multiple defendant cases, it was assumed that, unless otherwise stated, each defense counsel joined in any objection by the other. We therefore treat the action of counsel for the co-defendant as being on Bowman's behalf as well.

privilege, this would be nothing about which Bowman would be entitled to complain.

■ It makes no difference, we think, that the two witnesses did attempt to assert the privilege and that the court erroneously overruled their claim of privilege. Where the witness is not the party, the party may not claim the privilege nor take advantage of an error of the court in overruling it. On this point the authorities are practically unanimous.[2] (4 Jones on Evidence, 5th Ed., 1958, § 864, p. 1625; McCormick on Evidence, 1954, § 73, p. 153, § 133, p. 281; 8 Wigmore on Evidence, McNaughton Rev., 1961, § 2196, pp. 111–12, § 2270, at pp. 414–16; 3 Wharton's Criminal Evidence, 12 Ed., 1955, § 729, pp. 36–37; Morgan v. Halberstadt, 2 Cir., 1894, 60 F. 592; Taylor v. United States, 2 Cir., 1907, 152 F. 1; Hudson v. United States, 5 Cir., 1952, 197 F.2d 845; Poole v. United States, 9 Cir., 1964, 329 F.2d 720; compare Hyster Co. v. United States, 9 Cir., 1964, 338 F.2d 183, 187; Goldstein v. United States, 1942, 316 U.S. 114, 62 S.Ct. 1000, 86 L.Ed. 1312.)

The cases upon which Bowman relies are not in point. In Fletcher v. United States, 1964, 118 U.S.App.D.C. 137, 332 F.2d 724, a conviction was reversed because the prosecutor put a witness on the stand, knowing that the witness would claim his privilege against self-incrimination, and proceeded to ask a series of questions which the witness declined to answer. The ground for reversal was that the refusals to answer were prejudicial to the defendant. They constituted almost the entire examination of the witness and were calculated to permit the jury to draw adverse inferences from the witness's refusal. We have no such situation in this case. Namet v. United States, 1963, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278, is similar, except that the error, if any, was there held non-prejudicial. Neither case rests upon any claimed right of a party to assert the privilege of a witness. In our case the witnesses testified fully and were cross-examined at length. As the court pointed out to them, they had a means whereby to protect the privilege if they desired to do so, but they did not choose to use it. Moreover, since they gave the testimony under compulsion, they may well be protected against its use in other proceedings.[3] None of this, however, is any of Bowman's business.

■ Bowman does not attack the sufficiency of the evidence to convict him on the conspiracy count. He does claim, however, that there is insufficient evidence to sustain his conviction on the substantive count. This overlooks the fact that he was charged in the indictment as an accessory (18 U.S.C. § 2). Our examination of the record convinces us that there is ample evidence to sustain his conviction as one who "aids, abets, counsels, commands, induces or procures" the commission of the offense, in this case, the transportation in interstate commerce of the diamond, with the knowledge that it was stolen.

The record shows that Bowman, Davie and Reves burglarized the ranch home of one Vera Krupp Von Bohlen und Halbach, near Las Vegas, Nevada. The three of them entered the home, two of them (not Bowman) armed, tied up the lady and her foreman, and stole a diamond ring valued at somewhere between $150,000 and $300,000. Thereafter, and by agreement with Bowman, who was supposed to have a lead to a buyer, Davie and Reves took the ring to Miami, Florida, with the idea of disposing of it. Their peregrinations thereafter were from Miami to Shreveport, Louisiana, to

2. If a party calls a witness who then asserts the privilege, and if the court erroneously allows the witness to refuse to answer, the case might be different. In such a case, the party has the right to have the witness testify. Here, what is asserted is a right to have the witness refuse to testify. That is not Bowman's right.

3. 4 Jones on Evidence, supra, at p. 1625; 8 Wigmore on Evidence, supra, at pp. 417–419.

Chicago, to St. Louis, to Cairo, Illinois, to Elizabeth, New Jersey, and elsewhere. If the testimony is to be believed, Bowman never had possession of the diamond. There is, however, ample testimony to show that, while Davie and Reves took the diamond to Miami by car, Bowman went there by airplane and joined them in an effort to dispose of the diamond. The size of the stone and the fact that a bulletin had been widely circulated about the theft frustrated their efforts to sell it; no "fence" would buy it.

It is also asserted that the United States Attorney wilfully suppressed evidence, and that a coerced confession (of the witness Reves) was erroneously received in evidence. The record does not support these assertions.

■ The final contention is that Bowman was improperly sentenced. The prison sentence on each count is the maximum within the statutory limit. There is some indication that Bowman's sentence may have been as heavy as it was because he twice stood trial, whereas his co-defendants did not, and because the pre-sentence report had not been brought down to date. His counsel said that since the previous trial he had been leading an exemplary life. One cannot be sure from the brief transcript of the sentencing that either of these contentions was actually what moved the trial court to impose the sentence that it did. The record indicates that Bowman was the originator of the whole course of criminal conduct. The court may have felt that he deserved a heavy penalty. And the court made the entire sentence subject to the provisions of 18 U.S.C. § 4208(a) (2). In any event, this court has repeatedly held that it has no authority to review the sentence so long as it falls within the statutory limits.[4]

Affirmed.

---

4. Anthony v. United States, 9 Cir., 1964, 331 F.2d 687; Ellis v. United States, 9 Cir., 1963, 321 F.2d 931; Jones v. United States, 1963, 117 U.S.App.D.C. 169, 327 F.2d 867; Pependrea v. United States, 9 Cir., 1960, 275 F.2d 325; Bryson v. United States, 9 Cir., 1959, 265 F.2d 9; Flores v. United States, 9 Cir., 1956, 238 F.2d 758; Brown v. United States, 9 Cir., 1955, 222 F.2d 293; Berg v. United States, 9 Cir., 1949, 176 F.2d 122; Biren v. United States, 9 Cir., 1953, 202 F.2d 440.