419 P.2d 102

The STATE of Arizona, Appellee,

v.

William Thomas ROGERS, Appellant.*

No. 2 CA–CR 61.

Court of Appeals of Arizona.

Oct. 7, 1966.

* This appeal was filed with the Arizona Supreme Court and assigned that court's No. 1566. The matter was referred to this court pursuant to section 12–120.23, A.R.S.

Darrell F. Smith, Atty. Gen., William J. Schafer, III, County Atty., Pima County, William J. Augustine, Deputy County Atty., Tucson, for appellee.

Arthur R. Buller, Tucson, for appellant.

MOLLOY, Judge.

This is an appeal from a conviction of two counts of burglary, first degree, upon which conviction consecutive sentences were imposed.

The charges in question arise from the breaking and entering into two retail establishments in the City of Tucson, Arizona, in the early morning hours of September 5, 1964. One establishment so entered was the Ft. Lowell Market, a grocery store with a liquor department. The other establishment was the Lampost Liquor Store. Both establishments were entered by the breaking of a window with a large boulder, which, in each case, was found inside the store after the entry. The Ft. Lowell Market was entered at approximately 1 a. m. on the morning in question and the Lampost Liquor Store at approximately 3 a. m. From each store, certain alcoholic beverages in bottles were removed and this liquor was recovered by the police at the apartment of a Vernon Musgrove.[1]

The defendant was charged jointly with one Ronald Slay for burglarizing the Ft. Lowell Market and the Lampost Liquor Store. Prior to trial, Slay pleaded guilty to count two of the information (the Lampost Liquor Store burglary), and count one (Ft. Lowell Market burglary) was dismissed as to Slay. The remaining facts per-

---

1. The conviction of Vernon Musgrove of receiving stolen property was upheld by this court in State v. Musgrove, 3 Ariz. App. 155, 412 P.2d 724 (1966).

tinent to this opinion will be discussed in connection with specific questions presented for review.

The first attack made upon the judgment below is that the trial court committed error in denying a motion for bill of particulars and a motion for discovery. The motion for bill of particulars filed demanded that the state answer fifty-four questions pertaining to the crimes charged. The state voluntarily answered the first interrogatory, pertaining to the names of the persons in possession of the buildings burglarized, but resisted the bill of particulars as to the remaining fifty-three questions. On appeal, the defendant singles out the following seven questions as being those which he had the right to have answered:

"2. Did defendant (herein 'defendant' applies to defendant Rogers) give any statement or utterance in writing, or that was reduced to writing? If so, to whom, or who reduced same to writing? And whom else, if anyone, was present when any such communications occurred?

"3. In whose possession are any such communications at the present time?

"4. Did defendant make any oral statement, confession, admission or other communication of which the State has knowledge and will use at trial?

"5. If so, to whom were such oral communications made and whom else, if anyone, was present?

"6. Specify the exact wording, or substance, of such communications.

"7. Specify the exact date and approximate time of each such oral communication.

"8. Was defendant warned of his constitutional rights to counsel and to remain silent prior to any and all oral or written communications? If so, who warned him, and what was said by such person, and who else, if anyone, was present?"

In addition, a motion for discovery was filed seeking discovery of ten items, among which were any written statements taken from either of the co-defendants, Rogers or Slay.

The lower court ordered the state to produce any written statements taken from either defendant and the results of any tests and experiments which had been performed in connection with the investigation of the crime, but otherwise denied both the motion for bill of particulars and the motion for discovery.

On appeal, the defendant selects items 4 and 8 of the motion for discovery as being those which he had the right to obtain:

"4) any statement(s) of defendant in writing, or any notes relative to any oral conversation, including any portion of any police or other reports thereto;

\* \* \* \* \* \*

"8) all written statements, or notes relating to oral statements, of co-defendant Slay on the ground these may have material bearing on defendant's cause at trial, and on this Court's decision relative to defendant's Motion for Severance;"

\* \* \* \* \* \*

There were no written statements of either defendant introduced during the trial of this action, and the only argument made on appeal as to any prejudice to the defendant by the denial of the subject motions was in connection with an oral statement of the defendant that he was in the company of Slay from approximately 12 midnight on the evening in question until the two were apprehended by the police at about 3:50 a. m., which statement was testified to by the two police officers who arrested the defendant. The defendant asserts that failure to disclose the details of the making of this admission against interest "hopelessly prejudiced" the defendant in the preparation of his case, and that when testimony was introduced of such an admission, the de-

fendant was "entirely unprepared to test" this testimony. The defendant does not go beyond this in showing prejudice.

The preliminary hearing was conducted as to the charges against both defendants. Though the defendant Slay was represented by counsel at this preliminary hearing, the defendant Rogers was not, and no transcript was made of the preliminary hearing. There are unverified statements in this record that at the preliminary hearing there was a full disclosure of all of the testimony introduced at the trial of this action, including the testimony as to the admission in question.

■ A full dose of the discovery procedures prevalent in civil actions in this state would certainly have an aerating effect upon the whole criminal trial procedure. However, so long as the defendant may withhold until the time of trial the testimony that he will give to explain any evidence produced by the state, it seems to us that it would be unfair to force the state to make full disclosure of its case in advance of trial. Our Supreme Court has held that the degree to which discovery will be granted to the defendant should be left to the sound discretion of the trial court. State v. McGee, 91 Ariz. 101, 370 P.2d 261 (1962). We see no abuse of discretion in this regard in the instant case.

■ The next question presented for review is in connection with the testimony of the accomplice, Ronald Slay. At the trial of the action, Slay, after preliminarily seeking to invoke the Fifth Amendment, was required by the trial court to testify as to the circumstances of the Lampost Liquor Store burglary, the one to which he had pleaded guilty. In his testimony, Slay implicated the defendant as being with him and helping him carry the liquor from the store to the car used to transport the stolen property from the scene. The court indicated that Slay's claim of the Fifth Amendment would be honored as to the other count, as to which the charge against Slay had been dismissed. On direct examination, the state asked no questions about this other

count, but on cross-examination by defendant Rogers' counsel, Slay testified that the defendant had not been with him when this other burglary was committed. It is the defendant's contention that Slay having been put upon the stand by the state, the state vouched for his credibility, and therefore a directed verdict as to the Ft. Lowell Market burglary is mandated.

The defendant has cited no authority to the effect that the testimony of a witness called by a party may not be contradicted by that same party. The concept that a party is bound by the testimony of his "own" witness has its origin in the primitive "oath-helpers" trial and has been long-since been discarded by the courts of this land. 3 Wigmore, Evidence §§ 896, 897, 907 (3d ed. 1940).

The impeachment of a witness for bad character, bias, interest, corruption, et cetera, presents different problems, with which we are not here concerned. 3 Wigmore, Evidence §§ 900, 901 (3d ed. 1940); Udall, Arizona Law of Evidence, § 62. We hold that the state is not bound by the testimony of Slay as to the involvement of the defendant in the Ft. Lowell Market burglary, merely because the state called this witness to the stand.

■ The third and fourth assertions of error concern the trial court's rulings and statements in connection with Slay's claim to a privilege to refuse to testify as to the circumstances of both crimes. Slay, at the trial, was represented by his own counsel and this counsel, in open court, but in the absence of the jury, advised his client not to testify about either burglary on the grounds that the witness might incriminate himself.

Later, in the presence of the jury, Slay's attorney was reprimanded by the court for objecting to a question propounded to Slay concerning his acquaintanceship with the defendant on the grounds of self-incrimination. The basis of the court's reprimand was that the claim of privilege is personal to the witness and is not one to be made by counsel.

On appeal, defendant concedes that Slay's counsel was technically in error in making objection based upon the Fifth Amendment, but contends that the court was overly severe in reprimanding Slay's counsel before the jury, thus placing the defendant "* * * in a dismal and prejudiced light."

We do not believe that the reprimand to Slay's counsel would prejudice the defendant's position. If the defendant had believed himself to be so prejudiced, a proper instruction to the jury would have been appropriate if one had been requested. Seeing no prejudice, we refuse to reverse. Arizona Constitution, article 6, section 27, A.R.S.

The fifth question presented is whether reversible error was committed by the state's calling to the witness stand the accomplice Slay, knowing that Slay would invoke the Fifth Amendment in seeking to avoid testifying. Reliance is placed upon a line of Texas authority, among which is Washburn v. State, 164 Tex.Cr.R. 448, 299 S.W.2d 706 (Tex.1957), which decision quoted with approval from 18 Tex.Jur. 238, section 142:

> " 'Unless the witness has agreed to turn state's evidence, the prosecution ought not to place him on the stand; to do so and wring from him a refusal to testify, *affording the jury an opportunity to consider the refusal as a circumstance of guilt,* has been said to be "certainly prejudicial".' " (Emphasis added.) 299 S.W.2d at 708.

However, the *Washburn* case upon which the defendant Rogers relies is not in point. In Bowman v. United States, 350 F.2d 913 (9th Cir. 1965), a case similar to our case, the Ninth Circuit Court of Appeals stated:

> "The cases upon which Bowman relies are not in point. In Fletcher v. United States, 1964, 118 U.S.App.D.C. 137, 332 F.2d 724, a conviction was reversed because the prosecutor put a witness on the stand, knowing that the witness would claim his privilege against self-incrimination, and proceeded to ask a series of

questions which the witness declined to answer. The ground for reversal was that the refusals to answer were prejudicial to the defendant. They constituted almost the entire examination of the witness and were calculated to permit the jury to draw adverse inferences from the witness's refusal. We have no such situation in this case. * * * In our case the witnesses testified fully and were cross-examined at length. As the court pointed out to them, they had a means whereby to protect the privilege if they desired to do so, but they did not choose to use it. Moreover, since they gave the testimony under compulsion, they may well be protected against its use in other proceedings. None of this, however, is any of Bowman's business." 350 F.2d at 916.

Like *Bowman,* we have no such situation in this case. Slay was put on the stand, and, after invoking the privilege against self-incrimination, he was compelled to testify. Slay was examined by competent counsel for both the prosecution and for the defendant Rogers, therefore, the adverse inferences which the jury could have derived from the prosecution's calling of the witness Slay and his refusal to testify are not present.

The fact that Slay may have erroneously been required to testify is no violation of any right pertaining to this defendant. This is because as *Bowman,* supra, states:

> "It makes no difference, we think, that the two witnesses did attempt to assert the privilege and that the court erroneously overruled their claim of privilege. Where the witness is not the party, the party may not claim the privilege nor take advantage of an error of the court in overruling it. On this point the authorities are practically unanimous. (4 Jones on Evidence, 5th Ed., 1958, § 864, p. 1625; McCormick on Evidence, 1954, § 73, p. 153, § 133, p. 281; 8 Wigmore on Evidence, McNaughton Rev., 1961, § 2196, pp. 111–12, § 2270, at pp. 414–16;

3 Wharton's Criminal Evidence, 12 Ed., 1955, § 729, pp. 36–37; * * *." 350 F.2d at 916

Arizona's Supreme Court is in accord with these authorities. In State v. Cassady, ·67 Ariz. 48, at 60, 190 P.2d 501, at 509 (1948), the Supreme Court of Arizona states:

"* * * the privilege against incrimination is personal to the witness, and the accused is not entitled to have such evidence excluded which is claimed to have incriminated the witness. Wigmore on Evidence, vol. VIII, Third Ed., sections 2196 and 2270; 28 R.C.L. section 12, p. 427." 67 Ariz. at 60, 190 P.2d at 509.

8. Wigmore, Evidence § 2270 (McNaughton·rev. 1961), succinctly states. the rule in the case where the privilege is erroneously held inapplicable and the answer is compelled:

"In this case, the error has the effect merely of admitting facts concededly relevant. Where the complaining party is not the wronged witness, the party has no ground for complaint." 8 Wigmore, Evidence § 2270, p. 416

■ This line of authority, accentuated by the *Bowman* decision, is in our view in accord with the best-reasoned cases in this area of our law, see Namet v. United States, 373 U.S. 179, 83 S.Ct. 1151, 10 L. Ed.2d 278 (1963), and United States v. Maloney, 262 F.2d 535 (2d Cir. 1959). Accordingly, we see no reversible error in the calling of the witness Slay to the witness stand by the prosecution.

The sixth attack made upon the judgment below is that the court erred in denying a motion for mistrial on the ground that the testimony of two police officers relating to the alleged oral admission of the defendant was so contradictory in material matters that the trial court could not make a fair determination whether the defendant's constitutional rights had been violated in the taking of his statement.

This assertion of error relates to the fact that there was a discrepancy between the testimony of the two police officers as to whether the defendant was warned of his constitutional rights to remain silent and to have counsel when being interrogated. One police officer testified that the defendant was first arrested, that he then made the statement concerning his being with Slay the entire evening in question, and that thereafter the defendant requested counsel. According to this police officer, the defendant was never warned in his presence that he could refuse to answer questions, nor was he advised of his right to counsel. The other police officer testified the defendant first asked for counsel; was advised of his right to same; was told that he was not required to answer questions; that he subsequently made the incriminating statement in question, and was then arrested.

■■ There was testimony that the two police officers were not together with the defendant at all times and that some conversations were held with the defendant by each police officer in the absence of the other. This testimony obviates the necessity of finding any irreconcilable conflicts between the testimony of the two officers. Even if there was irreconcilable conflict, this court knows of no rule of law that would require reversal. That there should be conflict as to the details of what must have been somewhat of a routine investigation for these officers is not surprising. The settlement of conflicts in the evidence and the judging of the credibility of the witnesses, insofar as the protection of the constitutional rights in question are concerned, was for the trial court.

■ The defendant next complains that the trial court denied the following requested instruction:

"The law of this state admonishes you to view with caution the testimony of any witness which purports to relate an oral admission of the defendant."

The authorities submitted for the propriety of this instruction have reference to California Jury Instructions, Criminal Instruction 29d. The origin of this instruc-

tion is title 4, section 2061, paragraph 4, of the California Code of Civil Procedure,[2] of which we have no counterpart in our law. In California, the court has a constitutional right to " * * * make such comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the case." California Constitution, article 6, section 19. Conversely, in Arizona, our trial court has a constitutional prohibition in this language:

"§ 27. Charge to juries; reversal of causes for technical error

"Section 27. Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law. No cause shall be reversed for technical error in pleadings or proceedings when upon the whole case it shall appear that substantial justice has been done. Added, election Nov. 8, 1960."

The jury in this case was properly instructed as to the burden of proof required of the state, and there being no statutory provision in Arizona to the same effect as the requested instruction, we believe that the giving of the instruction would have been a comment upon the evidence by the court. The instruction was properly refused.

The next assertion of error is that the court wrongfully admitted in evidence the statement of the defendant that he was with the co-defendant Slay during the entire evening in question. The contention is made that the defendant was not properly advised of his constitutional rights, nor permitted counsel, in violation of the requirements of Escobedo v. United States, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

As previously indicated herein, the facts concerning the sequence of events pertaining to the giving of this statement are somewhat confusing. All of the evidence indicates that at approximately 3:50 a. m., September 5, 1964, the defendant and the co-defendant Slay were stopped by police officers in the neighborhood of the Lampost Liquor Store. At the request of the police officers, both defendants went to the police station where certain questions were asked of them. Both police officers agreed that during this interrogation the defendant Rogers stated that he wanted to contact his attorney. However, patrolman Pucilowski testified that this request was made after the damaging admission had already been made and that the defendant Rogers had never been warned in this officer's presence of his right to remain silent, nor that anything he said might be used against him. According to Pucilowski, at the time of this request for an attorney, the defendant was not given " * * * an opportunity to contact an attorney." However, Pucilowski testified that the other police officer, Sergeant Crabtree, had talked with the defendant.[3]

Sergeant Crabtree testified as follows:

"A. I told him that a burglary had been committed, and that due to a description of the vehicle, et cetera, we had asked him to come to the station. I informed him that I would like to talk to him about this, and he informed me at that time that he would like to contact his attorney. I went on to explain to him that this was his right to contact his attorney; that he did not have to talk to me if he did not want to; whatever he wanted to say."

2. This subsection of the California Code reads:
"That the testimony of an accomplice ought to be viewed with distrust, and the evidence of the oral admissions of a party with caution." West's Annotated California Codes, Vol. 22, Code of Civ. Proc., title 4, § 2061, para. 4, p. 376 (1955)

This subsection, along with all of title 4 of the Code of Civ.Proc., has been repealed by Stats.1965, c. 299, § 127, operative Jan. 1, 1967.

3. "Q. Can you tell us whether Sergeant Crabtree was with the defendant Rogers alone before you talked to him at the station?
"A. I believe he was."

Sergeant Crabtree further testified that in his conversation with the defendant, the defendant was told that he had the right to contact an attorney and that he could make a call to an attorney.[4]

According to Sergeant Crabtree, the foregoing transpired before the damaging admission was elicited from the defendant. Any inconsistency in the sequence of events was resolved by the trial court, who concluded that Sergeant Crabtree's conversation with the defendant took place prior to the time that Pucilowski elicited the admission in question, and that the defendant, with knowledge of his constitutional rights, nevertheless voluntarily made the statement in question:

"THE COURT: Well, it appears to me, from the testimony there, that the chronology of events indicate that Officer Crabtree could only have talked to him before the conversation with Officer Pucilowski, and also it further appears from the conversations here that the defendant made the statement at one time that he was on parole from the State Prison,[5] and that he didn't want to make any statements without seeing an attorney, which indicates that he had knowledge himself of his rights, and therefore, without any warning from the officers or statements from them, would be in a position to know his rights, and would be in a position to decide whether or not he wanted to make a statement, but the testimony is uncontradicted of Crabtree, as I see the testimony there, that he already informed him that he had a right to see his attorney and a right not to make a statement."
The defendant did not take the stand, either

in the absence or presence of the jury, so that the court was required to make its determination as to whether the constitutional rights of the defendant had been abused solely on the basis of the testimony of the police officers.

To determine if the trial court properly admitted Rogers' statement that he had been with Slay the entire evening, it is first necessary to examine the recent United States Supreme Court cases to decide whether the defendant was denied his constitutional rights by the arresting police officers.

A landmark case in this area is Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). In this case, Danny Escobedo was being questioned concerning the murder of his brother-in-law. When taken into custody between 8 and 9 p. m., he voiced a request to see his attorney, and while the interrogation ensued, Escobedo made repeated requests to talk with his lawyer. His attorney, at the behest of Escobedo's mother, went to the police station between 9:30 and 10 p. m., and having seen Escobedo in one of the interrogation rooms, he demanded to see his client. The police refused to permit the defendant Escobedo the benefit of his counsel. His counsel finally left the police station about 1 a. m., unable to talk with the accused. As a result of several hours of interrogation, while his right to counsel was thus refused, Escobedo implicated himself in the murder by statements made to the police. In reversing the conviction of Danny Escobedo, the Supreme Court of the United States held:

"* * * that where, as here, the investigation is no longer a general in-

---

4. "A. The defendant spoke first and stated that he wanted to know what this was all about, and that he wanted an attorney. 'I want to speak to an attorney,' or 'I want my attorney,' or 'An attorney.' I don't recall the exact words. And I told him that he had a right to an attorney; that he could make a call to an attorney; that he could tell me what he wanted to or he didn't want to tell me, that this was up to him."

5. The court's reference to the defendant being on parole at the time of the incident in question is predicated upon testimony of one of the police officers that the defendant stated that he was on parole from Leavenworth, which statement was made in the absence of the jury, as was the court's ruling above quoted.

quiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, *and* the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' Gideon v. Wainwright, 372 U.S., at 342, 83 S.Ct. at [792], 795 [9 L.Ed.2d 799] and that no statement elicited by the police during the interrogation may be used against him at a criminal trial." (Emphasis added) 84 S.Ct. at 1765

The *Escobedo* case was extended in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In *Miranda,* the United States Supreme Court issued a mandate proscribing the use of any statements made by an accused where the custodial interrogators did not follow a prescribed ritual of informing the accused of constitutional rights. The Supreme Court succinctly stated this ritual as follows:

"Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have

answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned." 86 S.Ct. at 1612

■ To whatever extent the *Miranda* decision extends *Escobedo*, we are not bound in this case. This is by virtue of Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), which makes *Miranda* prospective, and only to trials commencing subsequent to June 13, 1966. Since our case was tried on October 22d through the 26th, 1964, this court is obliged to follow *Escobedo*, which is also prospective, but applicable to trials commencing after June 22, 1964. Johnson v. State of New Jersey, supra, 86 S.Ct. at 1781.

■ Here, as we see it, under the trial court's resolution of conflicting evidence, the accused was given an opportunity to consult with counsel before interrogation, but no offer was made to provide counsel at the state's expense were the accused indigent. Whether the accused was " * * effectively warned * * * of his absolute constitutional right to remain silent * * " is an arguable matter and one as to which we give the defendant the benefit of doubt in the discussion that follows.

After considerable reflection and study of these two decisions, *Escobedo* and *Miranda,* we have concluded that *Escobedo,* without *Miranda,* does not proscribe the introduction of the statements admitted here. We do not believe it to be totally unimportant that the United States Supreme Court connects the two elements pertaining to denial of opportunity to consult with counsel and failure to warn with the conjunction "and" (see above quote from *Escobedo*). We believe *Escobedo* is a totality-of-circumstances case, rather than one laying down specific ritualistic requirements, as does *Miranda.* We believe it significant that the decision purports to

enforce only the Sixth Amendment with no mention of the Fifth Amendment, which takes on importance in the *Miranda* decision. The following language from the majority opinion in *Miranda* lends support to this conclusion:

"Our holding there [*Escobedo*] stressed the fact that the police had not advised the defendant of his constitutional privilege to remain silent at the outset of the interrogation, and we drew attention to that fact at several points in the decision, 378 U.S., at 483, 485, 491, 84 S.Ct. at 1761, 1762, 1765 [12 L.Ed.2d 977]. *This was no isolated factor, but an essential ingredient in our decision.* The entire thrust of police interrogation there, as in all the cases today, was to put the defendant in such an emotional state as to impair his capacity for rational judgment. The abdication of the constitutional privilege—the choice on his part to speak to the police—was not made knowingly or competently because of the failure to apprise him of his rights; the compelling atmosphere of the in-custody interrogation, and not an independent decision on his part, caused the defendant to speak." (Emphasis added) 86 S.Ct. at 1623

 Here, not only do we find no deprivation of right to consult with counsel, as that right existed at the time of *Escobedo*, but we do not believe that the statement made by Rogers, intended to be exculpatory, could be said to be the product of " \* \* \* the compelling atmosphere of the in-custody interrogation \* \* \*." We do not see any impairment of " \* \* \* rational judgment." The " \* \* \* independent decision \* \* \*" of the defendant to speak in an attempt to establish an alibi seems clear. The statement used .in evidence was elicited at the very onset of the interrogation and is not the product of any clever tricks of interrogation. We uphold the trial court's admission of the statement in evidence.

 The last assignment of error questions the sufficiency of the corroboration of the testimony of Slay that the defendant Rogers was involved in the Lampost Liquor Store burglary.

The defendant was identified by an eye-witness as being the driver of a light-colored 1954 Buick which was involved in the burglary of the Ft. Lowell Market at approximately 1 a. m. At approximately 3 a. m., the Lampost Liquor Store was burglarized. The means of entry into both establishments was substantially the same—a large boulder thrown through a window. In both instances only liquor was taken. At approximately 3:50 a. m., Slay and the defendant were apprehended together. in a 1954 white Buick. Coupled with this circumstantial evidence is the statement of the defendant that he had waited for the co-defendant Slay to get off work at midnight, at Slay's home, and had then accompanied Slay the entire evening in question until apprehended by the police. We hold the foregoing to be sufficient evidence to satisfy the requirement of corroboration. State v. Smith, 96 Ariz. 322, 395 P.2d 362 (1964).

Judgment affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.