**Robert J. FLETCHER, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 18223.**

United States Court of Appeals
District of Columbia Circuit.

Argued March 26, 1964.

Decided April 30, 1964.

Mr. Richard H. Nicolaides, Washington D. C. (appointed by this court), with whom Messrs. W. V. T. Justis and Richard A. Bartl, Washington, D. C., were on the brief, for appellant.

Mr. Gerald A. Messerman, Asst. U. S. Atty. with whom Mr. David C. Acheson, U. S. Atty., and Messrs. Frank Q. Nebeker and Paul Renne, Asst. U. S. Attys., were on the brief, for appellee. Messrs. John A. Terry and Victor W. Caputy, Asst. U. S. Attys., also entered appearances for appellee.

Before BAZELON, Chief Judge, PRETTYMAN, Senior Circuit Judge, and WASHINGTON, Circuit Judge.

PRETTYMAN, Senior Circuit Judge:

Appellant Fletcher was indicted, tried and convicted on a charge of robbery. The allegations were that he and two companions hailed a cab and directed the driver to take them to a certain address, and that upon arrival there they beat the driver almost into unconsciousness and robbed him. One of the alleged robbers was a juvenile named Anderson. He was apprehended and referred to the Juvenile Court, which sent him to the National Training School. He later testified before the grand jury, relating the affair

of the robbery as the Government claimed it to be.

Upon the trial of Fletcher in the District Court, the prosecutor informed the court, before the jury was sworn, that Anderson had indicated that he would refuse to testify. The prosecutor took the position that Anderson could not assert the privilege against self-incrimination, since he had already been prosecuted for the offense. No ruling was made on the question, and after this announcement the case proceeded. The Government called the cab driver and then a friend of the appellant. The Government then called Anderson. He answered to his name and address and then, when asked if he knew Fletcher, stood mute. The court excused the jury. Anderson answered to his age (16), height (6 feet 3½ inches), and weight (206 pounds). Asked whether he had appeared in Juvenile Court in regard to the robbery, he stood mute. The court was told by counsel that he had been sent to the National Training School by the Juvenile authorities. The court then said that he would appoint an attorney for the witness and directed the assignment office to secure a lawyer. The court assigned one of the assistants from the Legal Aid Agency. The situation was explained to him, and Anderson's testimony before the grand jury was read to him. The cab driver was recalled to the stand and identified Anderson as one of his assailants. The proceeding was recessed until the next morning. At that time Anderson's testimony before the grand jury was read again to the court, and the cab driver again identified Anderson as one of his assailants. The court was advised, by Anderson's counsel, that Anderson's "position will be that he will not answer on the grounds that it may incriminate him." The court ruled that the jury had a right to hear the questions put to the witness. Anderson's attorney announced that he had no objection. Counsel for Fletcher objected upon the ground that the procedure created an atmosphere of definite prejudice to Fletcher. The jury was recalled, and Anderson resumed the witness stand. He stated his name, address and age. He was then asked, "Do you know the defendant in this case?", and he answered, "I refuse to answer on the grounds that it might incriminate me." He was then asked the following questions, to each of which he made the foregoing reply:

"Were you with the defendant on March 2, 1963?"

"Were you in his company at approximately 3:30 a. m. on March 2, 1963?"

"Did you and he in the company of another boy hail a cab at about 14th and Otis Street, Northwest?"

"Did you ask this cabdriver to take you to 19th and Ingleside Terrace, Northwest?"

"Did you at that point after the taxicab driver had stopped his cab, gotten out and gotten back in, did you—did you put—did you and the defendant proceed to put your arms around his throat?"

"On March 2, 1963, did you and the defendant drive this taxicab through Rock Creek Park?"

"Did you in the company of the defendant take a ring and money and identification card from the taxicab driver on March 2, 1963?"

He was then asked whether he had appeared before the grand jury. At that point the court stopped the questioning and the witness stepped down. The defense put Fletcher on the stand as its sole witness.

In the course of his instructions to the jury the trial judge said, referring to Anderson and his refusal to testify:

"He had the constitutional right to do that. He didn't have to testify, if he felt that any answer might implicate him in this crime that this defendant is being tried for.

"Now, you must not infer or conclude by reason of the fact that Anderson elected to rely on his constitutional right and refused to tes-

tify in answer to these questions that that probably means this defendant is guilty.

"You must draw no inferences along those lines, no presumptions, or anything like that.

"I thought I would mention that to you, that was his constitutional right and that does not mean by itself, of course, that this defendant is guilty."

The question before this court is whether the proceedings involving the witness were so unfair in their prejudice to the defendant on trial as to constitute reversible error. The question is not new. It has been considered by several Circuit Courts of Appeals and was before the Supreme Court last term in Namet v. United States.[1] The Court referred to several federal cases and said that none of them suggests that reversible error is invariably committed whenever a witness claims his privilege, but that rather those courts "have looked to the surrounding circumstances in each case, focusing primarily on two factors, each of which suggests a distinct ground of error."[2] One of these grounds relates to prosecutorial misconduct, and the other "seems to rest upon the conclusion that, in the circumstances of a given case, inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant."[3]

Among the circumstances of the case at bar are the following features: (1) The Government knew, and the court also knew, that Anderson would refuse to testify upon his claim of the privilege under the Fifth Amendment. (2) The prosecutor asked a series of questions, which depicted the alleged offense in its entirety. The questions were not a "few lapses" as referred to in Namet. (3) The testimony sought from Anderson was the principal source of support for the testimony of the Government's only witness, the cab driver, and thus, if the jury drew inferences from Anderson's refusal to answer, those inferences would have served that purpose. (4) Anderson's refusals to testify were not incidents in the course of other admissible testimony given by him. He gave no other testimony. Save for the formalities, such as name, age and address, his refusals constituted the whole of his participation in the case. (5) Anderson's refusals were not mere incidents in a long trial. The trial was a short one, actually occupying some six hours spread over parts of two days, and Anderson's part in it was a major feature of the proceeding. (6) Although the court instructed the jurors that they should draw no inferences of guilt from Anderson's refusals, it added that the exercise by Anderson of his constitutional right "does not mean by itself, of course, that this defendant is guilty." The jurors might well have understood that statement to mean that Anderson's refusals might be considered along with other evidence as proof of Fletcher's guilt.

The opinion of the Court in the *Namet* case makes clear that the features we have enumerated are critical in the problem before us. The Court held in that case that Namet's substantial rights were not affected. In doing so it pointed out that the two witnesses involved possessed extensive non-privileged information, as to which they testified, and that the prosecutor, in eliciting this and other relevant testimony, asked only four questions which were privileged. The Court viewed "these few lapses" in the context of the entire trial. It said that the effect of these four questions was minimized by the lengthy non-privileged testimony given by the witnesses. The Court said: "In this case the few claims of testimonial privilege were at most cumulative support for an inference already well

---

1. 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963).

2. *Id.* 373 U.S. at 186, 83 S.Ct. 1151.

3. Id. 373 U.S. at 187, 83 S.Ct. 1151.

established by the nonprivileged portion of the witness' testimony." [4]

We do not have to consider whether a clear, forceful instruction to the jury, precluding any inferences from Anderson's refusals to testify, would have cured the prejudice inherent in the situation. The instruction, which we have quoted, seems to us to have left the situation much in doubt.

We are of opinion that in the circumstances of this case, viewed in their entirety, inferences from Anderson's refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced Fletcher.[5] They affected his substantial rights. The judgment of the District Court must, therefore, be

Reversed.

4. *Id.* 373 U.S. at 189, 83 S.Ct. 1151.

5. No argument was made to us with respect to the question whether or not Anderson was justified in relying on the Fifth Amendment right not to incriminate oneself, since he had already been subjected to the jurisdiction of the Juvenile Court and committed to a training school. We express no opinion on the subject. See D. C.Code §§ 11–915, 11–916 (1961 ed.); United States v. Dickerson, 106 U.S.App. D.C. 221, 271 F.2d 487 (D.C.Cir. 1959).