**Robert H. MOTTRAM, Petitioner, Appellant,**

v.

**Frank F. MURCH et al., Respondents, Appellees.**

**No. 71-1387.**

United States Court of Appeals, First Circuit.

Heard Feb. 23, 1972.

Decided April 12, 1972.

---

2. On the other hand, the California and Illinois legislatures have set a limitation on such dance contracts of $2,500.

S. Mason Pratt, Jr., Portland, Me., with whom Pierce, Atwood, Scribner, Allen & McKusick, Portland, Me., was on the brief, for appellant.

John W. Benoit, Jr., Deputy Atty. Gen., for appellees.

Before ALDRICH, Chief Judge, & McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

Petitioner Mottram in 1958 was indicted in the state court on two counts: one for stealing a car in 1957, and secondly for being an habitual offender by virtue of a prior felony conviction. 15 Me.Rev.Stat. § 1742. Although in fact he had several prior convictions, the only one alleged in the indictment was a 1952 conviction for automobile theft. Petitioner pleaded not guilty, and after

a false start[1] the court granted his motion for separate trials. At the trial on the first count he took the stand and testified with respect to the alleged 1957 theft that the owner had loaned him the car. On cross-examination he was asked, presumably for purposes of impeachment, about his prior convictions. He acknowledged the others, but when asked whether he had been convicted in 1952 of stealing a car, on advice of counsel he pleaded the Fifth Amendment. The jury returned a verdict of guilty. The court then sought to empanel a jury to try the recidivist count. There was a shortage of new jurors and to complete the panel the court, over petitioner's objection, called four jurors who had sat on the trial of the first count. On this occasion petitioner did not take the stand. The jury found him guilty, and the convictions were affirmed on appeal. State v. Mottram, 1962, 158 Me. 325, 184 A.2d 225. Thereafter he sought a writ of coram nobis, but was met with a decision that he had adopted the wrong procedure. Mottram v. State, 1964, 160 Me. 145, 200 A.2d 210. On neither of these occasions did petitioner seek to argue the matter of the repeating jurors.

Petitioner was subsequently released on parole, but he was shortly returned as a parole violator. He sought to attack the method as lacking in due process. For some reason not disclosed—counsel is now deceased—his petition contained two complaints about matters occurring during the trial itself. Counsel received permission to strike these, but the court informed counsel, and petitioner personally, that in view of 14 Me.Rev.Stat.[Ann.] § 5507[2] it felt petitioner must make his whole case at once and not piecemeal. Counsel expressed disagreement. Petitioner elected to press only his complaint as to the parole procedure. This he ultimately lost. Mottram v. State, Me., 1967, 232 A.2d 809. In the meantime petitioner sought to raise constitutional claims regarding his trial by a federal habeas petition, but was unsuccessful because of failure to exhaust his state remedies. Mottram v. Robbins, 1 Cir., 1966, unreported, cert. denied 388 U.S. 922, 87 S.Ct. 2122, 18 L.Ed.2d 1370. He then brought a habeas petition in the state court, again without success, the court ruling that the single justice's advice that attacking his parole revocation, and no more, would result in a waiver of any other claims was correct. Mottram v. State, Me., 1970, 263 A.2d 715. Additionally, the court said that petitioner waived any objection to the composition of the jury because, although he could have, he failed to raise it on his direct appeal in 1962.

Pursuing this judicial treadmill, we reach the present federal habeas corpus petition. It being undisputed that petitioner no longer had available state remedies, the district court held an evidentiary hearing, at the conclusion of which it dismissed the petition. 330 F.Supp. 51. The court found, applying the standards of Fay v. Noia, 1963, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837, as it understood them, that petitioner's failure to assert his present contentions in his 1965 state proceeding in the face of the state court's warning was such a deliberate bypassing of orderly state procedures as to bar him from raising them in a federal habeas action. In addition, it found against him on the merits. We granted a certificate of probable cause for appeal.

---

1. Initially petitioner was convicted on both counts in a single trial, and his convictions were affirmed on appeal. State v. Mottram, 1959, 155 Me. 394, 156 A.2d 383. However, the Superior Court thereafter granted a new trial for prosecutorial misconduct.

2. "All grounds for relief claimed by a petitioner under this remedy must be raised by a petitioner in his original or amended petition, and any grounds not so raised are waived unless the State or Federal Constitution otherwise requires or any justice on considering a subsequent petition finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition." (14 Me.Rev.Stat.[Ann.] § 5507)

■ The first question is the correctness of the district court's finding that petitioner had waived his state court remedies by accepting his counsel's advice as against that of the Superior Court judge. There is a "heavy burden against the waiver of constitutional rights," D. H. Overmyer Co. v. Frick Co., 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed. 2d 124 (1972) (Justice Douglas, concurring); see Aetna Ins. Co. v. Kennedy, 1937, 301 U.S. 389, 393, 57 S.Ct. 809, 81 L.Ed. 1177; McNeil v. North Carolina, 4 Cir., 1966, 368 F.2d 313, 315. Nonetheless, there can be no question but that section 5507, n.2 ante, is an orderly state procedure, serving a useful and proper purpose.[3] There are a great many instances where a party must be bound by a mistake of his counsel, and we would feel obliged to hold in this case that if counsel's advice was unreasonable petitioner could not rely upon it to avoid a finding of "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 1938, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, or a deliberate bypass of orderly state procedures.[4] Fay v. Noia, ante at 372 U.S. 438–439, 83 S.Ct. 822; see Henry v. Mississippi, 1965, 379 U.S. 443, 447, 85 S.Ct. 564, 13 L.Ed.2d 408.

■ However, although we of course bow to the Maine court's ultimate interpretation of its statute, we cannot think that counsel's belief that it would not reach that result was an unreasonable one. Section 5502 does not speak in terms of all common law remedies for illegal procedures and illegal confinement. On the contrary, as the court stated in Mottram, 263 A.2d at 719, and again at 721, the statute was addressed to "attacks on a conviction." The exact statutory language is "common law remedies . . . for challenging the validity of a conviction and sentence." Section 5507, in turn, is tied in with section 5502. In attacking the procedures leading to the revocation of his parole, petitioner was not attacking his conviction or sentence —whether he had violated his parole was an independent matter. The court in Mottram cited Longway v. State, 1965, 161 Me. 430, 213 A.2d 519, as supporting its result. It had there held, in connection with a prosecution for escape, that the validity of the conviction the defendant was serving was not at issue. With great deference we cannot think that knowledge of this decision must lead counsel to believe that the validity of the conviction would be at issue when the violation of parole was under consideration.

In the absence of extrinsic evidence that petitioner was not acting in good faith reliance on counsel's opinion, but rather was seeking to circumvent state procedures (it appearing clearly from the record that he did not intend to abandon his rights), see Fay v. Noia, ante at 372 U.S. 438–441, 83 S.Ct. 822, see generally The Supreme Court, 1962 Term, 77 Harv.L.Rev. 62, 143 (1962), we must reverse the district court's finding of waiver.

■■ At the oral argument, respondent called our attention to an alternative ground of waiver, not decided by the district court, namely a decision by the Maine court that by failing to include his objection to the composition of the jury in his original appeal, petition-

3. "In order to prevent harassment of the courts and a piecemeal presentation of asserted grounds of relief, the statute imposes the very reasonable requirement that if multiple petitions are presented, some reason or reasonable excuse be offered for failure to assert present grounds in an earlier petition." Nadeau v. State, Me., 1967, 232 A.2d 82, 84.

4. Those who, relying on Johnson v. Zerbst, ante 304 U.S., at 468–469, 58 S.Ct. 1019, would place the burden as to deliberate bypass on the petitioner, e. g., Sandoval v. Tinsley, 10 Cir., 1964, 338 F.2d 48, 50, mistakenly extend the presumption of regularity there attached to district court judgments to state court determinations of waiver. Since the issue of waiver of a federal right is a federal question to be independently resolved by the federal courts, Fay v. Noia, ante at 372 U.S. 439, 83 S.Ct. 822, no such presumption can attach.

**630**

er lost the right to raise it collaterally. Mottram v. State, 263 A.2d at 725. The court's ruling does not preclude petitioner from raising the issue by a federal habeas petition. There is no evidence to suggest that his failure to raise the jury issue on appeal was anything but inadvertent, and a federal constitutional right cannot be waived by simple inadvertence. *See* Frazier v. Roberts, 8 Cir., 1971, 441 F.2d 1224, 1230; Farrant v. Bennett, S.D.Iowa, 1966, 249 F.Supp. 549, cert. denied 384 U.S. 965, 86 S.Ct. 1595, 16 L.d.2d 676; cf. Hunt v. Warden, 4 Cir., 1964, 335 F.2d 936. Indeed, the state court itself found waiver only because it viewed the matter as a mere trial irregularity. *Compare* 263 A.2d at 725, with Bennett v. State, 1965, 161 Me. 489, 214 A.2d 667; Papolas v. State, Me., 1967, 235 A.2d 533. Since we view it as being of constitutional magnitude, see post, we cannot be precluded from reviewing it on habeas because of a state rule, the soundness of which we do not question, that mere trial irregularities are waived if not raised on appeal.

█ Turning to the merits of the repeating jurors matter, we need not quarrel with respondent's contention that the state could have tried both counts of petitioner's indictment simultaneously.[5] Spencer v. Texas, 1967, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606. *But cf.* Cross v. United States, 1964, 118 U.S.App.D.C. 324, 335 F.2d 987, where defendant wished to testify as to one count, but not as to the other. However, that is not, as the district court thought, the end of the case. Having granted his motion for separate trials, the court could not thereafter change the rules in such a way as to cause defendant prejudice. Permitting four jurors to sit on both trials created such a likelihood of prejudice to the petitioner as to deny him due process. Cf.

Leonard v. United States, 1964, 378 U.S. 544, 84 S.Ct. 1696, 12 L.Ed.2d 1028.

The first source of prejudice was that the four jurors heard evidence in the first trial which they were not entitled to hear in the second. *Cf.* Lett v. United States, 8 Cir., 1926, 15 F.2d 690. In the first trial, petitioner having testified on his own behalf, the court properly allowed the state, in an effort to impeach his credibility, to cross-examine him as to several prior convictions. In the second trial, since he did not take the stand, the prior convictions, except the 1952 conviction to which he refused to testify, were not admissible. Yet the four jurors, who might naturally be expected to tell the others, knew of them. Knowledge of these convictions would have been prejudicial in any case. It was particularly so when the jury was considering whether, albeit by reason of another conviction, petitioner was a recidivist.

█ Even more strikingly prejudicial was the four jurors' knowledge that petitioner, when asked specifically about the 1952 conviction during the first trial, had refused to answer, claiming the Fifth Amendment. Knowing that he properly could, and probably would, claim the Fifth Amendment as to the 1952 conviction, it was error, though probably not so prejudicial as to require reversal, for the prosecutor to have asked the question on the first trial.[6] *See* Namet v. United States, 1963, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278; Fletcher v. United States, 1964, 118 U.S.App.D.C. 137, 332 F.2d 724. Even if the previous questions were entirely proper when first asked, it is elementary that a defendant may not be impeached by showing that he had previously taken the Fifth Amendment when asked similar questions. The possibility of prejudice is too great to justify even such

5. Separate trials are now legislatively required, 15 Me.Rev.Stat. § 1742, but were not then. See Stubbs v. State, Me., 1968, 243 A.2d 57.

6. Petitioner's affirmative answer to this question would have solved the state's

problems on the second count, it being the law of Maine that a record of a conviction needs some identification other than an identity of names. State v. Mottram, 1959, 155 Me. 394, 156 A.2d 383.

631

limited use. Grunewald v. United States, 1957, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931; Stewart v. United States, 1961, 366 U.S. 1, 81 S.Ct. 941, 6 L.Ed.2d 84. The district court's citation of Griffin v. California, 1965, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, is beside the mark. It is even more serious to let the jury on the second trial know through the back door that petitioner had claimed the Fifth Amendment with respect to the very event then in issue. When knowledge of his pleading the Fifth Amendment comes to the jury sub rosa, the defendant loses the benefit of even a protective instruction by the court. *Cf.* United States v. English, 3 Cir., 1969, 409 F.2d 200. It follows that by changing the rules in the middle of the game the court placed petitioner in a worse position than if it had denied his motion for separate trials in the first place. Respondent's argument that he was not prejudiced is untenable.

The judgment is reversed, and the court is directed to grant the writ unless the petitioner is admitted to bail or retried within a reasonable time if he is presently incarcerated under this sentence.