LEIGH M. CLARK, Retired Circuit Judge.
A jury found this appellant guilty of robbery in the first degree, as proscribed by Alabama Criminal Code § 13A-8-41. The indictment alleged in pertinent part the following:
“Alvin Kennard ... did, in the course of committing a theft of $50.75 in lawful money of the United States of America, ...; property of Howard Hanna, d/b/a Highland Bakery use force against the person of Brazzie Barroy with the intent to overcome her physical resistance, or physical power of resistance, while the said Alvin Kennard was armed with a deadly weapon, to-wit: a knife, _”
By § 13A-8-41(c), robbery in the first degree is classified as a Class A felony, which by § 13A-5-6 is punishable by imprisonment “for life or not more than 99 years or less than 10 years.” After the defendant had been adjudged guilty, and the prosecution had given defendant due notice that he would be proceeded against under the Habitual Felony Offenders Act, a sentencing hearing was conducted, at which it was shown that on the trial of the case defendant had testified and had admitted that he had previously been convicted of three felonies. The court sentenced him to imprisonment for life without parole, in accordance with § 13A-5-9(c)(3), which states, “In all cases when it is shown that a criminal defendant has been previously convicted of any three felonies and after such convictions has committed another felony, he must be punished ... by imprisonment for life without parole.”
There is little, if any, disagreement between the attorneys for the respective parties on appeal as to the evidence presented on the trial of the case. There is little contention of counsel for appellant that the evidence was not sufficient to present a jury question as to his guilt, although a strong contention is made on appeal, as it was on the trial, that he was not guilty of the crime charged and was not present at the time and place the crime was committed. In this circumstance and in the interest of brevity, we quote from the comparatively short Statement of the Facts as found in brief of counsel for appellee, which appellant’s counsel in his reply brief does not challenge as incorrect. In brief of counsel for appellee it is stated:
“The State’s case presented against this Appellant consisted of several witnesses. The first two witnesses were the employees of the Highland Bakery who were present when the robbery occurred on January 24, 1983, at approximately 8:00 p.m. These two women testified consistently that two black males entered this business at this time and perpetrated the robbery which resulted in the taking of *929 the money from the cash register. Ms. Smith testified that the robber who was closest to her had on a black leather jacket which she was able to identify in open court. (It was later shown that this jacket was found on the person of the defendant at the time of his arrest.) In addition Ms. Smith testified that a roll of pennies was taken from the cash register with a certain name and phone number written on the outside of this roll. (This was also later found in or near the possession of the defendant.)
“Ms. Barrow testified similarly to Ms. Smith but indicated that the perpetrator nearest her held a knife on her, slightly cut her throat, threatened to kill her and pushed her to the floor. In addition she substantiated much of Ms. Smith’s testimony concerning the money taken from the register.
“In addition to the above Mr. Eddie Lee testified that he had seen the defendant and another gentleman who fit the general description of the robbers just prior to the time of the robbery. Mr. Lee’s testimony concerning the description of these two black males who were seen outside the bakery was consistent with that description given by the employees of the bakery in that there was one tall robber and one short robber. In addition Mr. Lee indicated that he had seen the defendant before and knew him and also that he was wearing a gold earring on that occasion. Mr. Lee later picked the defendant out of the line-up and identified him as one of the two he had seen outside the bakery.
“The remaining testimony of the State’s case was presented in the form of police officers with one exception. These officers who did in fact testify indicated that after going to the scene of the robbery they proceeded to two different addresses where they found the defendant and Warren Wendell Davis. Upon entering the house of Ms. Jones the officers discovered the defendant and Mr. Davis and found in their possession certain monies including the roll of pennies previously described and a black jacket and gloves which were also identified by Ms. Smith and Ms. Barrow.
“In addition to all the above the officers testified that Mr. Davis had confessed to them of his participation in the robbery and had indicated that the defendant was his accomplice in that robbery. This testimony came only after the Appellant had inquired as to whether or not Davis had in fact confessed and given them a statement.”
The testimony of Alvin Kennard, the defendant, was rather lengthy, but the substance of it is well summarized in the following paragraphs of the brief of counsel for appellant:
“Alvin Kennard took the stand on his own behalf. He testified that he had been with Wendell Davis that night but had left him shortly before the robbery occurred. He stated that he had gone down to the park to meet some friends, but they did not show up. He said he returned to Regina Jones’ [the girl friend of Wendell Davis and a witness called by the State in the instant case] house where he found Wendell Davis. He stated that he had been at Regina Jones’ house earlier in the evening but that Wendell Davis had wanted to go out to his mother’s house to try to get some money. He stated that they went by there but that Wendell’s mother had refused to give him any money. He said shortly after arriving at Regina Jones’ house the police officers arrived.
“He testified that he had pled guilty in 1979 to the charges of burglary, grand larceny, and buying and receiving stolen property. Said pleas were all entered on the same day. He stated that he was on probation for three years and never had any problems. He testified that while in the police car Wendell Davis pulled his knife out and laid it on the seat and Alvin Kennard took the knife and put it in his shoe. He also stated that the police officers mistreated him at the police station and hit him about his face.”
I.
The first issue presented in brief of counsel for appellant is thus captioned:
*930 “WHETHER OR NOT THE TRIAL COURT ERRED TO REVERSAL BY ALLOWING THE STATE’S WITNESSES TO TESTIFY AS TO INCULPATO-RY STATEMENTS MADE BY THE DEFENDANT’S ALLEGED ACCOMPLICE.”
In the first paragraph of the argument in support of Issue I, is the following:
“During the course of trial, the court allowed the State to elicit testimony from two of its witnesses, Sgt. Gwin and Regina Jones, concerning inculpatory statements made by the defendant’s alleged accomplice, Wendell Davis. The court, by admitting such testimony erred to reversal as said testimony was inadmissible hearsay and deprived the defendant of his Sixth Amendment Right of confrontation and cross-examination.”
In support of the argument stated, counsel for appellant relies upon Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), in which the Supreme Court stated at 380 U.S. 418-420, in part as follows:
“We decide today that the Confrontation Clause of the Sixth Amendment is applicable to the states. Pointer v. Texas, [380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923].
“Our cases construing the clause hold that a primary interest insured by it is the right of cross-examination; an adequate opportunity for cross-examination may satisfy the clause even in the absence of physical confrontation. As the Court said in Mattox v. United States, “ ‘The primary object of the Constitutional provision in question was to prevent depositions or ex parte affidavits ... being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.’ 156 U.S. 237, 242-243,15 S.Ct. 337, 339-40, 39 L.Ed. 409.
“.... In the circumstances of this case, petitioner’s inability to cross-examine Loyd as to the alleged confession plainly denied him the right of cross-examination secured by the Confrontation Clause. Loyd alleged statement that the petitioner fired the shotgun constituted the only direct evidence that he had done so; coupled with the description of the circumstances surrounding the shooting, this formed a crucial link in the proof both of petitioner’s act and of the requisite intent to murder. Although the Solicitor’s reading of Loyd alleged statement, and Loyd’s refusals to answer, were not technically testimony, the Solicitor’s reading may well have been the equivalent in the jury’s mind of testimony that Loyd in fact made the statement; and Loyd’s reliance upon the privilege created a situation in which the jury might improperly infer both that the statement had been made and that it was true. Slochower v. Board of Higher Education, 350 U.S. 551, 557-558 [76 S.Ct. 637, 640-41], 100 L.Ed. 692, 699; United States v. Maloney, 262 F.2d 535, 537 (C.A. 2d Cir.1959). Since the Solicitor was not a witness, the inference from his reading that Loyd made the statement could not be tested by cross examination. Similarly, Loyd could not be cross-examined on a statement imputed to but not admitted by him. Nor was the opportunity to cross-examine the law enforcement officers adequate to redress this denial of the essential right secured by the Confrontation Clause. Indeed, their testimony enhanced the danger that the jury would treat the Solicitor’s questioning of Loyd and Loyd’s refusal to answer as proving the truth of Loyd’s alleged confession. But since their evidence tended to show only that Loyd made the confession, cross-examination of them as to its genuineness could not substitute for cross-examination of Loyd to test the truth of the statement itself. Motes v. United States, 178 U.S. 458 [20 S.Ct. 993, 44 L.Ed. 1150]; cf Kirby v. United States, 174 U.S. 47 [19 S.Ct. 574, 43 L.Ed. 890]. *931 “Hence, effective confrontation of Loyd was possible only if Loyd affirmed the statement as his. However, Loyd did not do so, but relied on his privilege to refuse to answer. We need not decide whether Loyd properly invoked the privilege in light of his conviction. It is sufficient for the purposes of deciding petitioner’s claim under the Confrontation Clause that no suggestion is made that Loyd’s refusal to answer was procured by the petitioner, see Motes v. United States, supra, 178 U.S. at 471 [20 S.Ct. at 998]; on this record it appears that Loyd was acting entirely in his own interests in doing so. This case cannot be characterized as one where the prejudice in the denial of the right of cross-examination constituted a mere minor lapse. The alleged statements clearly bore on a fundamental part of the State’s case against petitioner. The circumstances are therefore such that ‘inferences from a witness’ refusal to answer added critical weight to the prosecution’s case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant.’ Namet v. United States, 373 U.S. 179, 187 [83 S.Ct. 1151, 10 L.Ed.2d 278], See also Fletcher v. United States, 118 U.S.App.D.C. 137, 332 F.2d 724 (1964).”
Counsel for appellee does not challenge the applicability of what was stated in Douglas v. Alabama, supra, and in subsequent cases adhering to that which is quoted therefrom hereinabove. In response to the first issue presented by appellant under argument in support thereof, counsel for appellee, as did counsel for the prosecution on the trial of the case, insists that counsel for defendant opened the door for the testimony of Sgt. Gwin and Ms. Regina Jones as to what they had heard Wendell Davis say by the following questions addressed by defendant’s counsel to Sgt. Gwin and Sgt. Gwin’s answers thereto on cross-examination by defendant’s counsel on the trial:
“Wendell Davis admitted to you that he robbed the Highland Bakery; didn’t he?
“A. Yes, sir.
“Q. Alvin Kennard denied it?
“A. Alvin Kennard didn’t give me a statement.
“Q. He didn’t admit it; did he?
“A. No, sir.
“Q. Wendell Davis did; didn’t he?
“A. Yes, sir.”
Both parties lean heavily upon Gamble, McElroy’s Alabama Evidence, § 14.01 (3d ed. 1977), on the topic of “curative admissibility,” of which the following is the first paragraph:
“Curative admissibility is the doctrine which holds that if a party introduces illegal evidence, his opponent has the unconditional right to rebut such evidence with other illegal evidence. The rule is applicable even if the opponent fails to object to the original illegal or inadmissible evidence. The limitation upon this doctrine is the rule that the illegal rebuttal evidence may be admitted only to the extent that it cures the effect of the admission of the first illegal evidence. If, for example, a party introduces evidence of a hearsay conversation then his opponent has the right to introduce only so much of the remainder of the conversation as rebuts that portion first offered.”
Appellant’s attorney does not concede that the interrogation by defendant’s trial attorney on cross-examination of the witnesses Sgt. Gwin and Ms. Regina Jones was illegal testimony. The dispute between the parties on appeal is an extraordinarily difficult one to decide. We think the transcript shows support for the contention of appellant that before and during the trial Wendell Davis loomed as a potential witness for the prosecution. He was known to have been at the courthouse during a part of the trial and to have been in communication with representatives of the prosecution. It is reasonably clear that defendant did not propose to use him as a witness. We are not certain that if there had been an objection by the State to any inquiry by defendant as to whether Wendell Davis had admitted his guilt and that there had been no trial of any case against him for the robbery evidence thereof would not have been admissible. Whether this is correct or not is not necessary for us to *932 decide in the light of our determination of the other phase of the appellant’s contention, that is, that the evidence offered by the State to which defendant’s objection was made went beyond the scope of the principle of “curative admissibility,” as to which it was stated by Justice Simpson in Cook v. Latimer, 274 Ala. 283, 287, 147 So.2d 831, 834 (1962):
“The doctrine of ‘curative admissibility’ is well recognized (See McElroy, Ala. Evid., Vol. 1, § 14.01 and cases noted therein). The line marking the limits of admissibility is somewhat adumbrant. Where no prejudice has occurred, the rule of course should not apply. The illegal rebuttal evidence may be admitted only to the extent that it cures the effect of the admission of the first illegal evidence. Where the first illegal evidence is highly prejudicial, the opponent should be allowed to reply as a matter of right to erase from the minds of the jurors the first illegal evidence.”
In our opinion, there was no prejudice to the State by any “opening of the door” by the defendant’s introduction into evidence by the witnesses for the State that Wendell Davis had admitted that he had committed the robbery, as to which the trier of the facts, the jury, would have wanted and been entitled to know. Furthermore, we are of the opinion that whatever opening of the door occurred was not sufficient for the passage through it of the details of what Wendell Davis had stated in his confession, highly injurious to defendant, to the denial of any opportunity afforded defendant to cross-examine Wendell Davis, which injurious evidence consisted of the following in the redirect examination of Sgt. Gwin:
“Q. Sgt. Gwin, during the cross-examination, Mr. Armstrong asked you about Wendell Davis’ conversation you had with him admitting robbing the bakery. Do you recall that?
“A. Yes, sir.
“Q. You recall that conversation you had with Wendell Davis when he admitted that?
“A. Yes, sir.
“Q. Would you relate to this jury, please, the rest of the conversation you had with Wendell Davis at that time concerning the robbery of Highland Bakery?
“MR. ARMSTRONG: Judge, that is what I objected to. I won’t belabor this. But, for the record in the jury’s presence, I object on the same ground as previously assigned, wherein the question has now been asked in front of the jury.
“THE COURT: Overruled. I will give you an exception.
“Q. (By Mr. Tucker, State’s attorney): You can answer that question.
“A. We asked Wendell Davis about the robbery. And he told us that he and Alvin Kennard committed the robbery. And he loaned Alvin Kennard his knife and his Ski mask. That they stood on the comer — correction, on the alley by the bakery until a car left and went inside the bakery. And Alvin Kennard carried one of the ladies working in there to the back of the store.
“Wendell Davis went to the front cash register and got the money out of there. He then yelled for Kennard, ‘let’s go.’ And Davis ran out of the store and Ken-nard followed after that.
“Q. Did he say how long afterward he followed him?
“A. Just a very brief period of time. A few seconds. A half minute or something like that.
“Q. And did he tell you where they went after that?
“A. Yes, sir, that they went to his girl friend’s house.
“Q. Whose girl friend’s house?
“A. Davis’ girl friend’s house. Her name is Regina Jones.”
Regina Jones, as a witness called by the State, testified in part as follows:
“Q. (By Mr. Armstrong [Defendant’s attorney]): You are aware that there is current charge placed against Wendell Davis; are you not?
“A. I don’t know what you mean.
“Q. Has he been charged with a crime, a criminal crime?
“A. I guess so. I really don’t know.
*933 “Q. And you and Wendell haven’t discussed any testimony that you might give or he might give in this case; have you?
“A. No.
“Q. Wendell tell you he loaned Alvin a knife and ski mask?
“A. No.
“Q. (By Mr. Armstrong). Wendell tell you he admitted to this robbery?
“MR. TUCKER: Judge, I object to hearsay.
“THE COURT: I will let her answer. “A. Yes, he did.
“MR. ARMSTRONG: That is all.
“REDIRECT EXAMINATION
“BY MR. TUCKER:
“Q. The same time Wendell told you he did this robbery, did he tell you who did it with him?
“MR. ARMSTRONG: Objection.
“THE COURT: I will let her answer. “MR. ARMSTRONG: We except to the Court’s ruling and assign grounds, therefor, it is illegal, incompetent testimony. It’s hearsay.
“THE COURT: Overrule your objection. “Q. (By Mr. Tucker): Did he tell you who did it with him?
“A. Yes. He called him Twin.
“Q. Who is Twin?
“A. Alvin Kennard.
“Q. That man right there?
“A. Yes, sir.
“Q. Let me ask you this: over the time you have been dating Wendell or going with Wendell Davis, have you-all ever had any conflicts concerning you dating this man here or anything of that nature?
“A. No.
“MR. TUCKER: That is all.”
In the absence of any substantial testimony of the innocence of defendant, it can be well reasoned that no prejudicial error was committed, but no such hypothesis exists in the light of the strong testimony of defendant himself, which cannot be conclusively accepted as an incredible story. The admission in evidence of the statements made by Wendell Davis could well have been the difference between the verdict of guilty that was rendered and a verdict of the jury finding defendant not guilty. We hold that the action of the trial court forming the basis for appellant’s first issue requires a reversal of the final judgment of the trial court and the remandment of this case for a new trial.
II.
The second issue presented by appellant’s brief is captioned as follows:
“WHETHER THE TRIAL COURT COMMITTED ERROR BY OVERRULING APPELLANT’S MOTION FOR JUDGMENT OF ACQUITTAL BASED UPON THE WEIGHT AND SUFFICIENCY OF THE STATE’S EVIDENCE.”
The defendant would not have been entitled to a judgment of acquittal “based upon the weight” of the evidence on behalf of the State. Appellant does not attempt to predicate this issue upon a contention that the trial court overruled a motion for new trial on behalf of defendant. We find no such motion in the record. There was substantial evidence, in our opinion, of the guilt of defendant, which fact entitled the State to a submission of the case to the jury for its verdict.
III.
By this issue in the brief of appellant’s counsel, it is contended that the warrant-less arrest of defendant soon after the robbery under consideration was committed was illegal in that it was not supported by probable cause. The brief argument in support of this issue does not set forth any law or facts that would justify the issue presented, and we are of the opinion that it is without merit.
IV.
In the brief of appellant’s counsel, an issue is captioned:
“APPLICATION BY THE TRIAL COURT OF THE HABITUAL FELONY *934 OFFENDER ACT TO APPELLANT VIOLATES THE EIGHTH AMENDMENT.”
In support of this issue, appellant cites Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), and attempts to distinguish the instant case from Thomas v. State, Ala.Cr.App., 447 So.2d 203, 209, which was distinguished by this Court from Solem v. Helm. We think the instant case is much more like Thomas v. State than it is like Solem v. Helm, in which a non-violent crime was involved and all previous felony convictions were for non-violent crimes. In the instant case, as in Thomas v. State, a violent crime is involved; in this case, there were three previous convictions, and in Thomas v. State, there were two previous convictions. According to the transcript of the testimony, based on questions asked the defendant by his attorney, the three previous felony convictions consisted either of “a conviction of burglary, another case of burglary, and then one of grand larceny” or “a conviction of burglary ... and then one of grand larceny, and buying and receiving stolen property.”
In our opinion, there is no merit in any of the issues presented in appellant’s brief except Issue I. As to it, the judgment of the trial court should be reversed and the cause remanded for another trial.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
REVERSED AND REMANDED.
All the Judges concur.