EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* CARMELO DÍAZ CINTRÓN, acusado y apelante.

*Número:* CR-64-128 *Resuelto:* 30 de octubre de 1964

*Raúl Barquet Trujillo*, abogado designado por el Tribunal Supremo para ofrecer asistencia legal al acusado en apelación; *J. B. Fernández Badillo, Procurador General*, y *J. F. Rodríguez Rivera, Procurador General Auxiliar*, abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Carmelo Díaz Cintrón en unión de otras dos personas fue acusado de tener en su posesión y dominio la droga narcótica conocida por heroína.

La prueba de cargo estableció que el día 13 de marzo de 1963 estando unos agentes especiales de Rentas Internas del Departamento de Hacienda en una ronda por Santurce reci-

bieron un aviso por radioteléfono. Con motivo de esa llamada se dirigieron a la Calle Benítez Castaño. Llegaron al sitio donde está ubicada una casa deshabitada. Uno de los agentes declaró que separada de la casa hay una letrina vieja y "pude ver por arriba de la letrina que hay una abertura" que dentro estaban los acusados que se alumbraban con una vela y "estaban haciendo preparativos con una chapita que es la forma que usan los adictos a drogas". Tocaron entonces a la puerta y vio cuando uno de los acusados, Torres Tapia botó por detrás de la letrina una bolsa. Cuando vio que uno de los acusados tiró la bolsa uno de los agentes "abrió la puerta— al halarla se cayeron las tablas porque eran viejas—y entonces los vio adentro y recogí cuando me metí adentro, una chapita de metal, un cuentagotas con aguja hipodérmica . . .". Ocuparon además la bolsa que tiraron por detrás de la letrina. En la bolsa encontraron diez decks. Analizada la substancia que contenían las chapitas ocupadas resultó ser "cloridrato de drocetilo de morfina o sea cloridrato de heroína. Una de las chapitas también dio positivo de cloridrato de heroína y los decks y las otras dos chapas dieron positivo de alcaloide de opio que es un derivado de opio, la misma substancia donde se origina la heroína."

Luego de terminada la prueba de cargo y admitida en evidencia sin la oposición de la defensa, lo ocupado a los acusados, el abogado pidió la reconsideración. Manifestó al tribunal que se proponía plantear la improcedencia de su admisión como prueba contra los acusados. Solicitó entonces que se citara a un testigo para demostrar que la evidencia fue ilegalmente ocupada.

El juez accedió a la citación solicitada pero el abogado manifestó que localizaría a la testigo y la presentaría en la sesión de la tarde. Al reanudarse la sesión por la tarde el abogado informó que la testigo se negó a comparecer pero que presentaría a otra persona en su lugar. El fiscal entonces plantea la cuestión de que en esa etapa de los procedimientos

no procedía una moción de supresión de evidencia. El juez lo sostuvo.

El abogado presentó entonces a la testigo como una de defensa y no para sostener su moción de supresión de evidencia. La testigo declaró que el mismo día del juicio había estado en el sitio donde se ocupó la heroína. Describió la letrina. Declaró que era de bloques, que no tenía rejas, pero que había una abertura entre el techo y la pared.

■■■ La regla general es al efecto de que el procedimiento para impedir que evidencia ilegalmente obtenida sea presentada, es mediante moción radicada antes del juicio en la cual se solicite su supresión. *Pueblo* v. *Nieves*, 67 D.P.R. 305 (1947). Pero aclaramos que "[c]uando por el examen directo o de repreguntas de los testigos de cargo resulta o en cualquier otra forma es admitido, que los artículos que son ofrecidos en evidencia han sido ilegalmente obtenidos, es el deber de la corte sentenciadora, al objetarse a dicha evidencia, rechazar su admisión. No habiendo en tales circunstancias cuestiones de hecho y nada que requiera que la corte haga una pausa en el curso del juicio para juzgar un hecho colateral, la corte sólo tiene que pasar sobre la admisibilidad de evidencia a base de hechos concedidos o admitidos".[1]

Así vemos que la excepción a la regla presupone que la cuestión surge de la propia prueba de cargo y no procede detener los procedimientos en el caso criminal para resolver una cuestión colateral.

■■ En el presente caso ni del examen directo ni del contrainterrogatorio a que fue sometido el agente surge la ilegalidad del registro. La prueba establece que los agentes observaron a los tres acusados en la letrina separada de una casa abandonada manipulando con objetos que normalmente se usan para inyectarse drogas narcóticas, y vieron además cuando uno de los acusados lanzó fuera de la estructura una

---

[1] La Regla 234 de las de Procedimiento Criminal de 1963 en su último párrafo permite este procedimiento.

bolsa de papel al notar que habían sido sorprendidos. Además nuestra disposición constitucional Art. II, Sec. 10 establece que "no se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros incautaciones y allanamientos irrazonables". Explicando la disposición transcrita se dijo en el informe de la Comisión que recomendó al pleno de la Convención Constituyente:

"La inviolabilidad de la persona se extiende a todo lo que es necesario para el desarrollo y expresión de la misma. El hogar los muebles y utensilios, los libros y papeles poseídos por un ciudadano son como una prolongación de su persona, pues constituyen el ámbito en que ésta se ha hecho y se mantiene. Toda intromisión sin su permiso en ese círculo privado equivale para todo hombre a una violación de su personalidad."

■ Claramente el concepto "casa" que aparece en la disposición constitucional no se circunscribe al sitio donde se tiene constituido el hogar. La protección es mucho más amplia. En *Lanza* v. *New York*, 370 U.S. 139, 143 (1962) se expone:

"Esta Corte ha sido muy poco restrictiva al delinear el ámbito físico a que se extiende la protección ofrecida por la Cuarta Enmienda. Una oficina de negocios es una área protegida, [*Silverthorne Lumber Co.* v. *United States*, 251 U.S. 385; *Gouled* v. *United States*, 255 U.S. 298] como también lo puede ser una tienda. [*Amos* v. *United States*, 255 U.S. 313; *Davis* v. *United States*, 328 U.S. 582]. La habitación de un hotel [*Lustig* v. *United States*, 338 U.S. 74; *United States* v. *Jeffers*, 342 U.S. 48] o un apartamiento [*Jones* v. *United States*, 362 U.S. 257] pueden, ante los ojos de la Cuarta Enmienda, convertirse en la 'casa' de una persona. Un automóvil no puede ser registrado irrazonablemente. [*Gambino* v. *United States*, 275 U.S. 310; *Carroll* v. *United States*, 267 U.S. 132; *Brinegar* v. *United States*, 338 U.S. 160; *Henry* v. *United States*, 361 U.S. 98]. Tampoco puede serlo un taxímetro ocupado. [*Ríos* v. *United States*, 364 U.S. 253]. No obstante, aún sin tratar de describir o prever el alcance máximo de la protección de la Cuarta Enmienda es obvio que una cárcel no participa de ninguno de los atributos de

privacidad de hogar, un automóvil, una oficina o una habitación de hotel."

■ Ciertamente por más abarcadora que sea la garantía constitucional no puede utilizarse para proteger la inviolabilidad de una letrina de una casa deshabitada en la que penetraron tres intrusos. En *United States* v. *Romano*, 330 F.2d 566 (2d Cir. 1964) se dijo: "La protección que ofrece la Cuarta Enmienda al pueblo en sus 'personas, casas, papeles y efectos' no se extiende a campos abiertos o edificaciones desocupadas. *Haster* v. *United States*, 265 U.S. 57." Ver además, *United States* v. *Minker*, 312 F.2d 632 (1962).

Carece de méritos el planteamiento de que el acusado no tuvo la debida asistencia de abogado. El letrado que lo representó agotó todos los recursos a su alcance en defensa del acusado. Contrainterrogó extensamente al testigo de cargo y planteó al tribunal varias cuestiones que evidentemente demostraban su conocimiento del caso.

Se queja el apelante de la forma en que el juez trató al abogado que lo representó durante el juicio. Apunta que en una ocasión dirigiéndose al abogado defensor se expresó así: "No me grite. Tenga cuidado. Está muy joven todavía para eso."

El incidente surgió cuando el abogado contrainterrogaba al testigo de cargo e insistía en formularle una pregunta. El Juez manifestó que ya el testigo había contestado. Entonces el abogado dirigiéndose al juez expresó evidentemente en alta voz "¿Pero no ve que el testigo me está evadiendo la contestación?".

■ Aparte de que los abogados al dirigirse a los jueces que presiden los juicios nunca deben gritarle y "es deber del abogado observar hacia el tribunal una actitud respetuosa . . ." Canon I de Ética Profesional, lo cierto es que el testigo no estaba evadiendo la contestación, pues llanamente había expresado que no sabía cuál era la demarcación del solar donde estaba la letrina.

Es conveniente apuntar que el abogado luego de pasado el incidente se dirigió al tribunal excusándose "por el exabrupto, la forma indiscreta de dirigirse al Tribunal este abogado en la ocasión anterior al receso. . . . El Tribunal comprenderá como se lo pedimos ahora con todo respeto que fue aquél un momento de exaltación por la situación en que giraba en ese momento el contrainterrogatorio que este abogado la hacía al testigo que declaraba "Así que le pido respetuosamente a Vuestro Honor mil perdones".

 Señala el apelante que el tribunal se negó a citar la testigo de cargo a que anteriormente hemos hecho referencia. El propósito de citar a esa testigo, según expuso la defensa, era para sostener su moción de supresión de evidencia y ya hemos visto que no procedía oir prueba aparte de la presentada por el fiscal. Y si el propósito era presentarla como testigo de defensa, no hubo perjuicio pues el abogado presentó otra testigo que declaró lo que la primera hubiera declarado.

 Apunta que cometió error el tribunal al no resolver sobre la inspección ocular solicitada. Aparte de que conceder una inspección ocular es una cuestión que va a la discreción del tribunal, *Pueblo* v. *Rivera*, 77 D.P.R. 664, 673 (1954); cf. *Emanuelli Fontánez* v. *Emanuelli Suro*, 87 D.P.R. 380 (1963), lo cierto es que el abogado hizo referencia de paso a una inspección y no reiteró su petición.

Se queja el apelante de que el juez interfirió indebidamente durante el juicio influyendo en el ánimo del jurado. Nada hay en la prueba que sostenga el error apuntado.

La contención de que el veredicto es contrario a la prueba, es por demás frívola para que merezca discusión.

No abusó de su discreción el juez sentenciador al negarse a referir el caso del apelante al oficial probatorio. Manifestó que "en un caso de esta naturaleza el Tribunal no va a mover su discreción en ese sentido. El no es ningún niño; tenía veintisiete años cuando se le leyó la acusación y no se trata aquí

del caso aislado de la inyección o del pomo de heroína, sino que se ocuparon diez 'decks' de heroína. Los contornos que tiene este caso impiden al juez a mover su discreción en ese sentido que se solicita". Véase *Pueblo* v. *Saura Gómez,* 90 D.P.R. 801 (1964).

*Se confirmará la sentencia.*