EL PUEBLO DE PUERTO RICO, apelado, *v.* ÁNGEL L. BURGOS HERNÁNDEZ, acusado y apelante.

*Número:* CR-81-37 *Resuelto:* 10 de febrero de 1983

*Margarita Carrillo* y *José M. Cruz Ellis*, de la Sociedad para Asistencia Legal, abogados del apelante; *Miguel Pagán, Procurador General Interino,* y *Lirio Bernal, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

El apelante, en unión de otros tres individuos perpetraron un asalto al Restaurant Chung King. Como parte de sus acciones de esa noche, los asaltantes violaron a dos mujeres que se hallaban presentes en el lugar.

A raíz de su participación en este asalto, el apelante fue convicto por varios delitos de robo, violación, tentativa de sodomía y por varias infracciones a la Ley de Armas, cometidos en otra ocasión. En apelación señala que el jurado que participó en el caso de autos estaba prejuiciado en su contra, porque sus miembros se habían seleccionado del mismo grupo de jurados que había participado en los casos a que hemos hecho mención. Sostiene, además, que el jurado debió haber sido disuelto tras un incidente en el que varios de sus miembros fueron amenazados anónimamente; que se le

denegó una inspección ocular del lugar de los hechos; que no se atendió a una solicitud de la defensa de citar varios testigos favorables; que no se rebatió la presunción de inocencia más allá de duda razonable, por cuanto la prueba fue insuficiente y contradictoria; que se violó el debido proceso de ley al no efectuarse la alocución antes de dictar sentencia; que las sentencias constituyen un castigo cruel e inusitado. (¹)

Para sostener el primer apuntamiento, señala que "[h]abiéndose celebrado los dos juicios en fechas tan cercanas es lógico concluir que los jurados comentaran entre sí la naturaleza de los delitos, la prueba aportada, los hechos del caso y otros incidentes y pormenores. La posibilidad de contaminación de los jurados es inescapable". No tiene razón.

El procedimiento para la selección de jurados está regulado por las Reglas 96 a 108 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. El proceso requiere la preparación de ciertas listas de personas que constituyen los jurados disponibles y que sirven en esta capacidad por un período de un año. Presumiblemente a esta lista es que se refiere el apelante al alegar que los jurados fueron seleccionados del mismo "grupo" en sus dos casos.

Ahora bien, el apelante no alega que alguna de las personas que sirvieron de jurado en el primer juicio también sirviera en esta capacidad en el segundo. De hecho, él mismo aclara que se recusó a los que estaban en esta situación. Tampoco hace alusión a ningún hecho específico que tienda a demostrar que los jurados del primer caso comunicaran a sus compañeros el hecho de su convicción ante-

---

(¹) El apelante también alega que se le violó su derecho al debido proceso de ley al desechar el juez de instancia la exposición narrativa de la prueba preparada por él y preparar una distinta en su lugar, que no refleja lo sucedido en el juicio. No es necesario discutir este planteamiento, puesto que aceptamos complementariamente la exposición preparada por el apelante.

rior.[2] Su contención se basa más bien en la posibilidad de que esto hubiera sucedido.

Para respaldar su posición, el apelante invoca el caso de *Leonard* v. *United States*, 378 U.S. 544 (1964). Allí, el Tribunal Supremo de los Estados Unidos revocó una convicción obtenida ante un jurado que incluía a cinco personas que habían estado presentes en un caso anterior del acusado al momento de decretarse su culpabilidad. El Tribunal Supremo acogió el criterio de que este hecho automáticamente los descalificaba para servir como jurados en un caso posterior similar que envolviera a la misma persona. El apelante sostiene que este criterio se aplica, no sólo a la situación del caso de *Leonard* en que el conocimiento de algunos de los jurados de la anterior convicción quedó claramente demostrado, sino también a la situación de autos en que lo único que se plantea es la posibilidad de que esto ocurriera.

■ Examinados los casos que constituyen la progenie de *Leonard*[3] entendemos que el pronunciamiento del Supremo federal no tiene la amplitud que pretende darle el apelante. Por el contrario, en *United States* v. *Carranza*, 583 F.2d 25 (1st Cir. 1978), se decidió en circunstancias muy parecidas al caso de autos, que no existía perjuicio

---

[2] El apelante alega que el conocimiento de los jurados surgió al momento de desinsacular a los que habían participado en el caso anterior, pero no demuestra que en ese momento se hubiera mencionado que el apelante había sido convicto.

[3] *Cf. United States* v. *Smith*, 335 F.2d 898 (7th Cir. 1964); *Gordon* v. *United States*, 384 F.2d 598 (8th Cir. 1967); *Mottram* v. *Murch*, 458 F.2d 626 (1st Cir. 1972); *United States* v. *Tweed*, 503 F.2d 1127 (7th Cir. 1974); *Donovan* v. *Davis*, 397 F.Supp. 372 (1975); *Government of Virgin Islands* v. *Parrott*, 551 F.2d 553 (3rd Cir. 1977); *Wall* v. *Superintendent, Virginia State Penitentiary*, 553 F.2d 359 (4th Cir. 1977); *Donovan* v. *Davis*, 558 F.2d 201 (4th Cir. 1977); *United States* v. *Carranza*, 583 F.2d 25 (1st Cir. 1978); *Bromwell* v. *Williams*, 445 F.Supp. 106 (1977); *United States* v. *Patterson*, 648 F.2d 625 (9th Cir. 1981); *United States* v. *Stratton*, 649 F.2d 1066 (5th Cir. 1981); *Dunaway* v. *State*, 278 So. 2d 205 (1973); *Brantley* v. *State*, 317 So. 2d 337 (1974); *Commonwealth* v. *Zakas*, 263 N.E.2d 446 (1970); *Hill* v. *State*, 348 So. 2d 848 (1977); *Hale* v. *United States*, 361 A.2d 212 (1976); *People* v. *Haskett*, 640 P.2d 776 (1982).

para el acusado por el mero hecho de que el panel del jurado hubiera sido seleccionado de entre jurados que habían "servido en un caso en que se había presentado evidencia relacionada al segundo caso, ausente prueba de que alguno de los jurados efectivamente hubiera participado en un caso anterior referente a la misma transacción". Otros casos siguen esta interpretación. Véanse, *United States* v. *Tweed*, 503 F.2d 1127 (7th Cir. 1974); *Donovan* v. *Davis*, 397 F.Supp. 372 (1975); *Brantley* v. *State*, 317 So. 2d 337 (1974); *Hill* v. *State*, 348 So. 2d 848 (1977); *Hale* v. *United States*, 361 A.2d 212 (1976); y *United States* v. *Patterson*, 648 F.2d 625 (9th Cir. 1981). Véanse, además, 3 *Wharton's Criminal Procedure*, 12ma ed., 1975, Sec. 449, pág. 251; Annot., *Juror's Presence at or Participation in Trial of Criminal Case (or Related Hearing) as Ground of Disqualification in Subsequent Criminal Case Involving Same Defendant*, 6 A.L.R.3d 519 (1966), Sec. 9, pág. 535. Estimamos que ésta es la posición más razonable. No hubo error.

■ Alega el apelante que el tribunal de instancia erró al negarse a disolver el jurado pese a que se suscitó un incidente en el cual dos de sus miembros recibieron amenazas anónimas. El tribunal excusó a estas dos personas, luego de examinar a cada uno de los jurados. El apelante argumenta que lo que procedía era excusar a todos los jurados debido al perjuicio que se le ocasionaba. Sin embargo, tampoco aquí se ha demostrado que los jurados envueltos comunicaran a sus compañeros lo sucedido. El perjuicio parecería ser exclusivamente hipotético. *Pueblo* v. *Prados García*, 99 D.P.R. 384 (1970). La acción del tribunal al excusar a los dos jurados sirvió para disipar el efecto negativo del incidente e impedir que éste afectara la decisión de los otros jurados.

■ Sostiene el apelante que erró el tribunal de instancia al negar una inspección ocular del lugar de los hechos. Esta determinación era discrecional, a tenor con la Regla 134 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

*Pueblo* v. *Pagán Díaz*, 111 D.P.R. 608 (1981); *Pueblo* v. *Díaz Cintrón*, 91 D.P.R. 146 (1964); Regla 81 de Evidencia.

■ No creemos que el tribunal abusara de su discreción al denegarla, en vista de que el propósito perseguido por el apelante al hacer esta solicitud era el de contradecir evidencia presentada por el Pueblo sobre la iluminación del *restaurant*. Esto ya se había hecho mediante el testimonio del propio dueño del negocio. Por lo tanto, la inspección ocular nada añadía al proceso y, en cambio, resultaba una dilación inconveniente e innecesaria. *Pueblo* v. *Pagán Díaz*, supra, pág. 617.

Señala el apelante que el tribunal erró al negarse a citar unos testigos de la defensa al serle solicitado. Se trata de un incidente surgido en momentos en que la defensa desfilaba su prueba. Ésta trató de introducir en evidencia el informe oficial del agente de la Policía que había investigado el caso. Se negó lo solicitado. El informe supuestamente contenía unas declaraciones sobre la descripción de los asaltantes hechas por dos mozos chinos del *restaurant*, las cuales eran inconsistentes con las vertidas por los testigos del Pueblo. Ante la determinación del tribunal, el apelante solicitó que se citara a los dos mozos. Esta petición fue denegada. Alega que esta decisión fue errónea.

■ No se discute el derecho de que gozan los acusados de obtener la comparecencia compulsoria de testigos que les puedan favorecer. En *Pueblo* v. *Acosta Escobar*, 101 D.P.R. 886 (1974), expresamos que este derecho no está limitado a ninguna etapa del juicio en particular. Esto no obstante, este derecho puede ser atemperado. Procede denegar una petición como la surgida en este caso, si las circunstancias no la ameritan. *Pueblo* v. *Ayende*, 39 D.P.R. 243 (1929); *Pueblo* v. *Báez*, 44 D.P.R. 54 (1932); *Pueblo* v. *Sarria*, 57 D.P.R. 882 (1941); *Pueblo* v. *Cintrón*, 58 D.P.R. 384 (1941); *Pueblo* v. *Díaz Cintrón*, 91 D.P.R. 146 (1964); *Pueblo* v. *Vélez Torres*, 98 D.P.R. 5 (1969).

El apelante no nos ha persuadido de que el juez de instancia abusara de su discreción al denegar su petición en este caso, ni que esto le hubiera causado un perjuicio real. El propio policía testificó que apenas pudo entender lo que le dijeron los dos mozos. Ante esta realidad cabe cuestionarse el valor que hubieran tenido sus testimonios de ser presentados en corte, teniendo en cuenta que el apelante ya había sido positivamente identificado por todos los testigos del Pueblo. Por otro lado, el juez inquirió sobre el paradero de los dos mozos antes de denegar la petición, siendo informado que al menos uno de ellos ya no se encontraba en Puerto Rico. Ante estas circunstancias estimamos justificada la acción del tribunal.

█ Tampoco erró el tribunal al encontrarlo culpable a base de la prueba de identificación sometida por los testigos del Pueblo. (4) Basta señalar que hemos examinado los tes-

---

(4) En síntesis, esta prueba fue la siguiente:

Nayda Dávila Criado testificó que el día de los hechos se encontraba acompañada de Sonia Mercado y Teresa Vargas en el Restaurant Chung King. Estaban sentadas como a 25 pies de la entrada. La iluminación del salón era con luces fluorescentes altas. Vio cuando entraron cuatro individuos con revólver en una mano y pañuelos en la otra. Dos de ellos se acercaron a la mesa y las amenazaron, diciéndoles que se trataba de un asalto y que mantuvieran la cabeza sobre la mesa. Los individuos se pusieron los pañuelos en la cara. Mientras mantenía la cabeza baja pudo ver que se llevaban a Sonia y a Teresa a la parte de atrás del salón. Mientras tanto, las despojaban de prendas y carteras. Identificó al acusado como el que se llevó a Teresa. Era el más alto, como de 6 pies, vestía más deportivo que los demás. Tenía el pelo enrizado, cejas bastante pronunciadas y ojos grandes. Encorvaba los hombros, y los lados de la cara estaban como en contracción o tensión. Los autores se repartieron las prendas y el dinero y se fueron. El incidente duró como 45 minutos. Unas semanas después una agente le mostró una cantidad de fotos entre las cuales identificó la del acusado. Posteriormente identificó a los otros individuos mediante fotografías y en rueda de detenidos. En la rueda de detenidos en que estaba el acusado no pudo identificar a nadie. La explicación que dio fue que el acusado mantenía la cabeza inclinada durante la rueda de identificación y que a pesar de sus requerimientos, no levantó la cabeza. Por temor a cometer un error optó por no identificar a nadie.

En el contrainterrogatorio fue confrontada con una declaración jurada anterior en la cual había declarado que no había podido ver bien la cara del acusado. La testigo explicó que "por el transcurrir del tiempo se le había refrescado la memoria".

Sonia Mercado Cumba testificó que se encontraba en el *restaurant* con las

timonios y no estamos persuadidos de que las inconsisten-
cias existentes, si alguna, justifiquen descartarlos. Véase
*Pueblo* v. *Peterson Pietersz*, 107 D.P.R. 172 (1978). No hemos
descubierto ningún indicio de pasión, prejuicio o error
manifiesto en la apreciación de la prueba por el jurado.
*Pueblo* v. *Lebrón González*, 113 D.P.R. 81 (1982).

 Alega el apelante que se violó su derecho a no ser
privado de su libertad sin el debido procedimiento de ley al
proceder el tribunal de instancia a dictar sentencia sin
antes efectuar la alocución que dispone la Regla 166 de las
de Procedimiento Criminal, 34 L.P.R.A. Ap. II.([5]) No tiene
razón.

---

otras testigos cuando entraron varios hombres armados, con pañuelos en una
mano, y dijeron que era un asalto. Le impresionó uno por lo alto, la mirada y lo
abultado de las cejas. Lo identifica como el "Gigante Verde". Dos de los asaltantes
fueron adonde ellas y las despojaron de sus prendas. Uno de ellos la condujo al
baño, pero no había podido identificarlo. Éste le ordenó ponerse de espaldas, trató
de cometer sodomía y la violó. Luego se fue y entró otro hombre que también tuvo
relaciones con ella de forma parecida. Después que se fue se quedó en la puerta del
baño hasta que oyó a Teresa decir que se habían marchado. El incidente duró
como 45 minutos, de los cuales estuvo 30 dentro del baño. Posteriormente iden-
tificó al acusado mediante fotografías y en rueda de detenidos.

Teresa Vargas Cabrera testificó que estaba en el *restaurant* cuando de pronto
entraron varios individuos armados. Luego procedieron a cubrirse la cara con
unos pañuelos. Uno de ellos se acercó y les dijo que se trataba de un asalto y les
ordenó que bajaran la cabeza sobre la mesa. El acusado la agarró por detrás a la
vez que la encañonaba con una arma. Se dio cuenta de que era alto porque el
hombro de ella le quedaba poco más arriba de la cintura a él. Lo describió como
un hombre de seis pies de estatura, pelo negro lacio, con bigotes, ojos obscuros, con
cejas abultadas y largas. Le tapó la cara con una servilleta de tela y la llevó al
baño, donde la violó. Ella cerró los ojos. Luego él salió y entró otro hombre que le
tiró una servilleta en la cara y procedió a violarla. Al rato, cuando no escuchó más
ruidos, preguntó si se habían marchado y vio a Sonia saliendo del otro baño y a
Nayda con la cabeza todavía en la mesa. Posteriormente identificó al acusado en
una rueda de detenidos.

En el contrainterrogatorio, testificó que la iluminación del baño era un poco
más tenue que la del salón, pero que se veía muy claro.

([5]) El texto de esta regla es el siguiente:

"En casos de delitos graves (*felonies*), al comparecer el acusado a oír la sen-
tencia, el tribunal le informará de la naturaleza del cargo contenido en la acu-
sación y del pronunciamiento del fallo, y le preguntará si existe alguna causa legal
por la cual no deba procederse a dictar sentencia. Si no existiere tal causa legal, el
tribunal dictará sentencia. Si el acusado no estuviere representado por abogado, el

En *Pueblo* v. *Llanos Virella*, 97 D.P.R. 95 (1969), y en *Pueblo* v. *Hernández*, 94 D.P.R. 116 (1967), resolvimos que la omisión del juez de instancia de cumplir con esta disposición no da lugar a una revocación de la sentencia, a menos que el acusado demuestre que podía aducir alguna de las causas reconocidas por la ley para que la sentencia no fuera dictada, ya que de otro modo no se estaría demostrando qué perjuicios le hubiera ocasionado esta omisión. En el caso de autos, el apelante no ha cumplido con este requisito.

Finalmente, alega que las sentencias dictadas son tan altas que constituyen un castigo cruel e inusitado,[6] al haberse dispuesto que serían cumplidas consecutivamente. Tomando en cuenta la naturaleza de los delitos cometidos y el hecho de que las penas decretadas caen dentro de los límites fijados por un estatuto válido, carece de fundamento el apuntamiento. Véase 4 *Wharton's Criminal Procedure*, 12ma ed., 1976, Sec. 633, pág. 301; Annot., *Length of Sentence as Violation of Constitutional Provisions Prohibiting Cruel and Unusual Punishment*, 33 A.L.R.3d 335 (1970), Sec. 5, pág. 359 y casos allí citados.

*Se confirmará la sentencia apelada.*

El Juez Asociado Señor Irizarry Yunqué no intervino.

---

tribunal le informará de su derecho a apelar y, a solicitud del acusado, el secretario preparará y presentará un escrito de apelación cumpliendo con los requisitos que exigen estas reglas."

[6] Las penas impuestas por la sala sentenciadora fueron las siguientes:

| | |
|---|---|
| Tentativa de sodomía | 3 a 10 años |
| Violación | 14 a 25 años |
| Violación | 14 a 25 años |
| Robo | 14 a 20 años |
| Robo | 14 a 20 años |
| Robo | 14 a 20 años |
| Art. 7, Ley de Armas | 1 a 5 años |
| Art. 7, Ley de Armas | 1 a 5 años |
| Art. 7, Ley de Armas | 1 a 5 años |
| Art. 7, Ley de Armas | 1 a 5 años |
| Art. 6, Ley de Armas | 6 meses |
| Art. 6, Ley de Armas | 6 meses |
| Art. 6, Ley de Armas | 6 meses |
| Art. 6, Ley de Armas | 6 meses |