El Pueblo de Puerto Rico, apelado, *v.* Reynaldo Navarro Rodríguez, acusado y apelante.

Número: CR-94-37     Resuelto: 24 de octubre de 1996

*Cándida Valdespino Zapata,* de la *Sociedad para Asistencia Legal,* abogada del apelante; *Jackeline Debién, Subprocuradora General,* y *Nelson Colón Román, Procurador General Auxiliar,* abogados de El Pueblo.

## SENTENCIA

### I

El apelante, Reynaldo Navarro Rodríguez fue acusado por los delitos de secuestro,[1] robo,[2] escalamiento agravado[3] e infracciones a los Arts. 5, 6, 8 y 8A de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 415–418a.

Celebrada la vista en su fondo por tribunal de derecho, el apelante fue hallado culpable de todos los delitos que le fueron imputados y fue sentenciado a cumplir una pena de 24 años por el delito de secuestro, 20 años por el de robo y 8 años por el de escalamiento, además de imponérsele 12, 3, 3 y 15 años por las infracciones a los Arts. 5, 6, 8 y 8A de la Ley de Armas de Puerto Rico, *supra,* respectivamente. Las penas así impuestas se cumplirían en una institución penal, consecutivas entre sí, para un total de 85 años de reclusión.

El apelante Reynaldo Navarro Rodríguez fue encausado por los hechos que dieron base al caso de autos, junto con

---

[1] Art. 137 del Código Penal, 33 L.P.R.A. sec. 4178.

[2] Art. 173 del Código Penal, 33 L.P.R.A. sec. 4279.

[3] Art. 171 del Código Penal, 33 L.P.R.A. sec. 4277.

su hermano y coacusado, Julio Navarro Rodríguez. Ambos fueron hallados culpables por el tribunal de derecho, pero sólo Reynaldo solicitó una reconsideración de la sentencia ante el tribunal de instancia, al igual que la correspondiente apelación ante nos.

En reconsideración, el tribunal de instancia rebajó la pena de 24 años por secuestro a 16 años, por lo cual se redujo así a 77 años el término que el apelante cumpliría en prisión.

Inconforme con dicha determinación, el apelante recurre ante nos para plantear los señalamientos de error siguientes:

1. Erró el Honorable Tribunal al emitir un veredicto cuando la prueba presentada por el Ministerio Público, considerando totalidad [sic] de la prueba presentada, no establece la culpabilidad del acusado convicto más allá de toda duda razonable;
2. Erró el Honorable Tribunal al darle credibilidad al único testigo de cargo;
3. Erró el Honorable Tribunal al imponer las penas de manera consecutiva, constituyendo así un castigo cruel e inusitado.

La adecuada discusión de estos señalamientos de error requiere que hagamos una sinopsis de la prueba de cargo, que fue presentada y creída por el tribunal sentenciador.

## II

Surge de la exposición narrativa de la prueba que el testigo de cargo, Jesús Deynes López, declaró en el juicio lo siguiente:

Allá para el 29 de octubre de 1993, en horas de la tarde, el testigo se dirigía hacia su casa en el barrio Cubuy de Canóvanas cuando decidió detenerse en una farmacia localizada en el barrio Campo Rico del referido pueblo. Al llegar a dicho lugar observó que un individuo, que anteriormente había conocido por el nombre de Julio, le hacía ciertos gestos con su mano derecha en señal de llamada. Al

acercarse a Julio, éste le apuntó por la cintura con una pistola color negra y le requirió las llaves de su carro. En ese mismo momento, apareció el apelante, Reynaldo Navarro Rodríguez, y le arrebató las llaves del auto. Según el testimonio de Deynes López, Julio le indicó al apelante que cogiera las llaves del carro y buscara la escopeta que se encontraba en el asiento trasero de su automóvil. Le sugirió, además, que se llevaran al testigo para otro sitio. Julio se montó en su carro y le ordenó al testigo que entrara en la parte trasera del auto. Por su parte, Reynaldo se montó en el vehículo robado, el cual era propiedad del testigo. Mientras se dirigía al carro del testigo, Reynaldo señaló que conduciría detrás del carro guiado por Julio para poder matar al testigo en caso de que éste intentase salirse del auto.

Una vez estuvieron en los respectivos automóviles, se dirigieron a la casa de Julio, localizada en otro lugar del mismo barrio Campo Rico en Canóvanas. Al llegar a dicho lugar, tanto Julio como Reynaldo expresaron su intención de desmantelar el carro robado —propiedad del testigo— pero prefirieron esperar a que anocheciera. Esperaron por espacio de dos a tres horas, comunicándose durante dicho período con un individuo conocido por el apodo de Chaca. En dicho lapso de tiempo, tanto Julio como el apelante tuvieron al testigo amenazado de muerte y le apuntaron en todo momento con una pistola y una escopeta.

Al oscurecer, Julio y el apelante le pidieron a Chaca que quitara los aros del carro del testigo y se los pusiera al automóvil de Reynaldo. Chaca logró sacar solo uno de los aros del carro del testigo ya que, aproximadamente como a las nueve de la noche, apareció la esposa, la madre y el hermano del testigo. Éste pudo oír las voces de su familiares, pero no pudo dirigirse a donde ellos se encontraban, debido a que Julio lo mantenía detrás de su casa apuntándole con la pistola. El testigo escuchó cuando su esposa y su madre preguntaron por él, al igual, que cuando le dije-

ron a éstas que él se había marchado con el aro y el neumático. También oyó cuando su esposa le indicó a su hermano que le pusiera el neumático de repuesto al auto para llevárselo. Al poco tiempo, escuchó que llegaron unos policías. En esos instantes, Julio y el apelante escondieron al testigo en la parte trasera del carro de Julio. Julio le apuntaba con una escopeta, mientras que el apelante lo hacía con una pistola negra.

Cuando se marcharon los policías, Julio y el apelante decidieron llevar al testigo a su casa. Al llegar a el la, le requirieron al testigo que entrara por el espacio del aire acondicionado. Para obligar al testigo a abrir la puerta de su casa, Reynaldo también entró por el mismo espacio y lo amenazó. Al abrir la puerta, Julio entró y, junto a Reynaldo, se llevaron de la casa del testigo un televisor, un vídeo y una aspiradora de polvo. Colocaron estos objetos en el baúl del carro, y volvieron a llevar al testigo a la casa de Julio. Posteriormente, decidieron mover al testigo a su casa, no sin antes advertirle que si decía algo a la Policía, lo mataban a él y a su familia.

Durante el contrainterrogatorio, el testigo declaró que había visto anteriormente a Julio y al apelante, ya que ambos trabajaban en una gasolinera que él frecuentaba. Asimismo señaló que tanto él como su esposa Damaris conocían donde vivían Julio y el apelante ya que, apenas veinte días antes, éstos habían asaltado al testigo frente a su casa, y le robaron cierta cantidad de dinero. Este dinero fue reclamado por los esposos Deynes directamente a los acusados en su residencia, sin que hubiesen notificado entonces a la Policía de lo acontecido.

Durante el juicio testificó, además, Damaris Ruiz De Jesús, esposa del primer testigo de cargo Jesús Deynes López. En su testimonio ésta declaró que el 29 de octubre de 1993, como a eso de las 5:15 de la tarde, recibió una llamada de su esposo en la cual le informaba que partiría

desde la casa de su madre hacia su casa. Transcurridas varias horas sin que su esposo llegara a su residencia, Damaris, en unión a su suegra y al hermano de su esposo, decidió tratar de localizar a su cónyuge. Durante su búsqueda, Damaris se encontró con un individuo que conocía a su esposo y le preguntó por el paradero de él. Éste le indicó que había visto a su esposo en el barrio Campo Rico de Canóvanas. Damaris decidió corroborar la información que el individuo le había suministrado, dando una ronda por las calles del referido barrio. En el trayecto, observó el carro de su esposo justo al frente de una de las residencias de dicho lugar. El automóvil se encontraba sin un neumático y sin un aro. Le preguntó a las personas que se hallaban en ese lugar por su esposo. Uno de éstos le contestó que éste se había marchado con el neumático y el aro. En ese momento, y al notar que el automóvil tenía las llaves pegadas a la cerradura del baúl, Damaris le dijo a su cuñado que pusiera el neumático de repuesto en el lugar de la goma que habían sacado a fin de poder llevarse el carro. Acto seguido le pidió a la persona que se encontraba en la casa contigua que le permitiera llamar por teléfono, a lo que ésta contestó que no. Se dirigió entonces al cuartel de la Policía más cercano, pero antes de llegar a dicho lugar se encontró con un policía y le relató lo sucedido.

En el contrainterrogatorio, a preguntas del abogado de la defensa, Damaris señaló que con anterioridad a dichos sucesos, esto es, el 9 de octubre de 1993, los propios coacusados habían asaltado a su esposo frente a su casa, llevándose cierta cantidad de dinero que éste poseía. Conoció de dicho evento por medio de una conversación que sostuviera con su esposo el mismo día en que fue asaltado. Aclaró que en aquel momento tanto ella como su esposo le tenían miedo a los asaltantes. No empece a ello, se reunieron con los asaltantes para reclamarles el dinero robado, justo en

el sitio donde posteriormente apareció el automóvil de Deynes en el barrio Campo Rico.

Por último, Damaris declaró que ignoraba por qué su esposo tuvo que entrar a la casa por el espacio del aire acondicionado, ya que éste muy bien conocía que la cerradura de la puerta de la casa estaba dañada y que no era necesario el uso de llave alguna para entrar.

Durante el juicio se estipuló, además, la declaración jurada del Policía Juan Resto Navedo, adscrito al Cuartel de la Policía de Canóvanas, a quien Damaris había relatado el incidente en cuestión. En esencia, éste corroboró los testimonios vertidos por los testigos de cargo y, además, indicó que luego de la investigación correspondiente, los objetos alegadamente robados de la casa de Deynes fueron encontrados en las residencias de Julio y del apelante.

Por su parte, la única prueba presentada por la defensa consistió del testimonio de Agustín Pérez Rodríguez, mejor conocido por el apodo de Chaca. Éste se limitó a declarar que los acusados poseían los objetos alegadamente robados debido a que Jesús Deynes López se los vendió. Señaló, además, que Deynes nunca fue secuestrado, sino que se encontraba en la casa de Julio voluntariamente a los solos efectos de venderle a aquéllos los aros y los neumáticos de su propio carro. Sostuvo que Deynes le ocultó a su esposa la transacción de compraventa que intentaba llevar a cabo con los coacusados. Según su testimonio, ésta sospechaba de la transacción de compraventa a ser consumada, ya que ella había intimado que su esposo la llevaría a cabo con el propósito de obtener dinero para la compra de sustancias controladas.

## III

La controversia principal en el caso de autos gira, esencialmente, en torno a la credibilidad que el tribunal de ins-

tancia le otorgó a los testigos de cargo presentados por el Ministerio Fiscal.

Aduce el apelante que la prueba presentada por el Ministerio Fiscal, en torno a los delitos de escalamiento, robo e infracción a la Ley de Armas de Puerto Rico era poco creíble e insuficiente en derecho para probar más allá de toda duda razonable su culpabilidad con respecto a éstos. Apoya su contención en la versión ofrecida —pero no creída— en el juicio por el testigo de la defensa, en la que alega que dicho relato era el más convincente y, por lo tanto, debió ser el que gozara del aval del tribunal sentenciador. Menciona, además, que las infracciones a la Ley de Armas de Puerto Rico que le fueron imputadas no fueron debidamente probadas, ya que ni se ocuparon las armas utilizadas por los acusados ni se demostró mediante prueba circunstancial la posesión y portación de ellas.

Sobre el asunto de credibilidad de la prueba, en reiteradas ocasiones hemos establecido que la evidencia directa de un solo testigo, de ser creída por el juzgador, es prueba suficiente de cualquier hecho. Regla 10(D) de Evidencia, 32 L.P.R.A. Ap. IV. Corresponde al tribunal sentenciador aquilatar la prueba testifical ofrecida y dirimir su credibilidad. En razón de ello, repetidamente hemos establecido que en asuntos de credibilidad de la prueba concederemos gran deferencia a las determinaciones de hechos efectuadas por los tribunales de instancia. *Pueblo v. Torres Rivera*, 137 D.P.R. 630 (1994). En ausencia de error, prejuicio o parcialidad, este Tribunal no intervendrá con las determinaciones de hechos, la apreciación de la prueba y las adjudicaciones de credibilidad efectuadas por los tribunales sentenciadores. *Pueblo v. Maisonave Rodríguez*, 129 D.P.R. 49 (1991); *Pueblo v. Rivera Robles*, 121 D.P.R. 858 (1988); *Pueblo v. Acabá Raíces*, 118 D.P.R. 369 (1987); *Pueblo v. Falú Martínez*, 116 D.P.R. 828 (1986); *Pueblo v. Pagán Díaz*, 111 D.P.R. 608 (1981); *Pueblo v. Díaz Ríos*, 107 D.P.R. 140 (1978).

En cuanto al fallo de culpabilidad por infracción a la Ley de Armas de Puerto Rico, sabido es que este Tribunal ha establecido que en este tipo de casos no es necesario presentar como evidencia el arma misma que poseyera y portara el acusado, siendo suficiente que lo mismo surja de otra evidencia clara y convincente. *Pueblo v. Adorno Cabrera*, 133 D.P.R. 839 (1993); *Pueblo v. Acabá Raíces*, supra; *Pueblo v. Torres Nieves*, 105 D.P.R. 340 (1976); *Pueblo v. Garcés*, 78 D.P.R. 102 (1955); *Pueblo v. García*, 42 D.P.R. 142 (1931).

En el caso de autos es evidente que los testimonios vertidos por los dos testigos de cargo, de ser creídos como fueron por el tribunal sentenciador, son suficientes para establecer la comisión de los delitos de escalamiento, robo e infracciones a la Ley de Armas de Puerto Rico por parte del apelante. Ciertamente, el testimonio de Jesús Deynes López, corroborado por el de su esposa, era suficiente para que el tribunal sentenciador concluyera que el apelante le había arrebatado las llaves del carro al testigo, le había apuntado en repetidas ocasiones con una pistola o con la escopeta y había penetrado armado a la residencia del testigo apropiándose allí de ciertos objetos eléctricos. Sorprende aún más que, a pesar de que el abogado de la defensa entiende que el testimonio de su testigo es el más cónsono con la realidad, dicho abogado no impugnó a los testigos de cargo en el contrainterrogatorio con la versión que se disponía ofrecer el único testigo de defensa. En este caso no encontramos un solo ápice de prueba que demuestre que el tribunal de instancia actuó con error, prejuicio o parcialidad al otorgarle credibilidad a los testigos de cargo y rechazar el testimonio del testigo de la defensa. Aunque lo relatado por los testigos de cargo parece algo extraño, no tenemos fundamento realmente para intervenir con la apreciación de la prueba realizada por el foro sentenciador.

# IV

Además de lo antes mencionado, el apelante hace un señalamiento de error en el cual cuestiona si los hechos particulares de este caso son suficientes para encontrar probados cada uno de los elementos necesarios para configurar el delito de secuestro.

En esencia, el apelante señala que la prueba presentada por el Ministerio Público para probar el delito de secuestro es insuficiente en derecho debido a que no se estableció uno de los elementos de dicho delito, a saber: el elemento de distancia sustancial. Aduce el apelante que, de acuerdo con nuestros pronunciamientos en *Pueblo v. Echevarría Rodríguez I*, 128 D.P.R. 299 (1991), la mera sustracción de una persona dentro de la misma área o vecindario inmediato no constituye un secuestro, según este delito ha sido tipificado por la Asamblea Legislativa. Se aduce que, como en el caso de autos, Deynes sólo fue trasladado de un punto a otro dentro del mismo barrio o vecindad, no se probaron todos los elementos del delito de secuestro —en específico, el de distancia sustancial— y, por ende, que no se probó más allá de toda duda razonable la culpabilidad del apelante con respecto a éste.

En el caso de *Pueblo v. Echevarría Rodríguez I*, supra, tuvimos la oportunidad de examinar los elementos constitutivos del delito de secuestro tipificado en nuestro Código Penal, mediante el examen de unos hechos muy particulares, que a todas luces fueron desgarradores para la sociedad puertorriqueña. En síntesis, nos vimos precisados a resolver si el traslado del Sr. Luis Vigoreaux del expreso de Trujillo Alto hacia un sector conocido como Los Guanos en Cupey Alto, con el único propósito de darle muerte, configuró o no el delito de secuestro.

Alegaba el apelante en dicho caso que el traslado del señor Vigoreaux consistió en un acto incidental al propósito de darle muerte, por lo que al no existir prueba inde-

pendiente que estableciera la intención de privar a la víctima de su libertad, no quedó configurado el delito de secuestro. En aquella ocasión, luego de hacer una breve exégesis del delito, acogimos el criterio avalado por varios estados de la Unión americana y citamos con aprobación la Sec. 212.1 del Código Penal Modelo, que dispone lo siguiente: "A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business or a *substantial distance* from the vicinity where he is found, or if he unlawfully confines another for a *substantial period* in a place of isolation." (Énfasis suplido y en el original.) *Pueblo v. Echevarría Rodríguez I*, supra, págs. 362–363, citando a *American Law Institute, Model Penal Code and Commentaries* Parte III, Sec. 212.1, págs. 209–210. A tono con la disposición antes mencionada, en aquel caso reconocimos que cuando la sustracción fuese un acto incidental a la comisión de otro delito, uno de los elementos que se habrá de considerar para determinar si se había configurado el delito de secuestro era el elemento de distancia sustancial. En aquella ocasión sólo examinamos lo relacionado a este elemento, ya que los hechos particulares del caso no requerían que interpretáramos las otras dos modalidades igualmente citadas con aprobación del Código Penal Modelo, a saber: (1) la del lugar donde se sustrajo a la víctima, sea su residencia o negocio, y (2) la de período sustancial, cuyo factor determinante es la duración de la restricción. Al parecer esto indujo al apelante en el caso de epígrafe a obviar en su alegato la discusión de las otras modalidades aludidas, ya que circunscribió su argumentación al elemento de distancia sustancial. Cabe señalar que el hecho de que las otras modalidades no hayan sido plenamente discutidas en *Pueblo v. Echevarría Rodríguez I*, supra, no significa que ellas hayan sido rechazadas. Por el contrario, al citar con aprobación la referida Sec. 212.1 del Código Penal Modelo, es de suponer que en *Pue-*

*blo v. Echevarría Rodríguez I,* supra, acogimos no sólo el elemento de distancia sustancial, sino también el de lugar de sustracción y el de período sustancial. No existe nada en dicho caso que permita inferir lo contrario. En vista de ello, en el caso de epígrafe examinaremos si, a la luz de cualquiera de las modalidades antes mencionadas, se configuró el delito de secuestro.

Un examen detenido de los autos nos lleva forzosamente a concluir que en el caso de epígrafe sí se cumplió con la tercera modalidad del delito de secuestro antes mencionada, a saber, la de período sustancial. No cabe duda de que en el caso de autos el apelante sustrajo al testigo-víctima de una farmacia en Campo Rico en horas de la tarde y no es hasta horas de la noche que lo regresa a su casa. Durante ese lapso de tiempo tanto el apelante como su hermano pudieron transportar a la víctima desde un lugar a otro de la vecindad; retenerlo en su residencia hasta que oscureciera; lograron comunicarse con otra persona; quitarle al carro de la víctima uno de los neumáticos; transportar a la víctima a su casa; robar ciertos enseres; regresar con la víctima a la residencia; hablar con los policías, y de nuevo llevar a la víctima a su casa.

El largo período transcurrido en el cual la víctima fue objeto de una restricción a su libertad sí demostró a cabalidad la modalidad que del Código Penal Modelo citáramos también con aprobación como constitutiva de secuestro: la de período sustancial.

En razón de ello, concluimos que, al quedar probado el secuestro según la modalidad de período sustancial, no erró el tribunal de instancia al declarar al apelante culpable del referido delito.(4)

---

(4) Adviértase que la modalidad del lugar donde se sustrajo la víctima no ha sido discutida este caso, ya que de los autos surge que la sustracción se produjo en una farmacia que no era ni el negocio ni la casa de la víctima.

# V

Por último, el apelante cuestiona que el foro sentenciador le haya impuesto las penas en forma consecutiva, por entender que ello constituye un castigo cruel e inusitado. Solicita que, a fin de contribuir a su rehabilitación, se le impongan las penas de forma concurrente. No le asiste la razón.

Es norma reiterada que la determinación del modo en que un convicto cumplirá con los términos de prisión, concurrente o consecutivamente, descansa en la sana discreción del tribunal sentenciador. *Pueblo v. Chévere Heredia*, 139 D.P.R. 1 (1995); *Pueblo v. Torres Rivera*, 129 D.P.R. 331 (1991). La naturaleza de los delitos, los límites fijados por el estatuto correspondiente, así como todos aquellos principios de justicia relativos a los hechos particulares del caso, son factores que se deben tomar en consideración cuando el juzgador vaya a ejercer su discreción. *Pueblo v. Pagán, Ortiz*, 130 D.P.R. 470 (1992); *Pueblo v. Hernández Mercado*, 126 D.P.R. 427 (1990); *Pueblo v. Burgos Hernández*, 113 D.P.R. 834 (1983).

Generalmente, cuando las penas decretadas están dentro de los límites fijados por el estatuto correspondiente, no intervenimos con la discreción del tribunal sentenciador, a menos que en el ejercicio de dicha discreción haya mediado pasión, prejuicio, parcialidad o mal juicio. *Pueblo v. Pagán Santiago*, supra, pág. 481.

A la luz de las circunstancias específicas del caso, concluimos que el tribunal de instancia ejerció adecuadamente su discreción al imponer las penas de acuerdo con lo que le era requerido por ley. No encontramos en el caso de autos señal alguna que nos dirija a pensar que el foro a quo haya actuado con pasión, prejuicio, parcialidad o mal juicio al imponer las penas consecutivamente. Los hechos del caso de autos, según creídos por el tribunal de instancia, evidentemente justificaban la imposición de penas

consecutivas. En vista de ello, entendemos que el error señalado no fue cometido.

Por los fundamentos antes expuestos, *se confirma la sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Carolina, el 20 de mayo de 1994.*

Lo pronunció, manda el Tribunal y certifica el Señor Secretario del Tribunal Supremo. El Juez Asociado Señor Negrón García emitió una opinión concurrente, a la cual se unió el Juez Asociado Señor Hernández Denton. El Juez Asociado Señor Rebollo López no intervino.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario del Tribunal Supremo*

— O —

Opinión concurrente del Juez Asociado Señor Negrón García, a la cual se une el Juez Asociado Señor Hernández Denton.

Coincidimos con la sentencia mayoritaria. El foro sentenciador no erró al apreciar la prueba y la imposición de las penas consecutivamente, y no constituye un castigo cruel e inusitado. También, se configuró el delito de secuestro, pero por otros fundamentos.

I

Comete secuestro toda persona que mediante fuerza, violencia, intimidación, fraude o engaño sustrajese a otra para privarla de su libertad. Art. 137 del Código Penal, 33 L.P.R.A. sec. 4178. La conducta prohibida "consiste en sustraer o detener a una persona y moverla de un sitio a otro, privándola de su libertad". D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 3ra ed. rev., Hato Rey, Ed. Inst. Desarrollo del Derecho, 1995, pág. 224.

Como regla general, cuando la sustracción de la víctima es *meramente incidental* a la comisión de un delito, se excluye como conducta constitutiva de secuestro, a menos que la víctima haya sido trasladada una distancia considerable, que la restricción haya tenido una duración sustancial o que el lugar de la sustracción sea la residencia o el negocio de la víctima. *Pueblo v. Echevarría Rodríguez I*, 128 D.P.R. 299, 361 (1991).([1]) O sea, *si no es incidental a la comisión de otro delito, se configura el secuestro sin importar el período que duró la restricción.*

## II

Nuestra sentencia descansa sobre la base de que se constituyó el delito de secuestro, *debido al extenso tiempo transcurrido.* A juicio nuestro, el factor tiempo no es determinante; de acuerdo con el trasfondo fáctico, éste no está en juego.

La prueba demostró lo siguiente. *Primero,* el objetivo primario de los acusados fue hurtar el vehículo de Deynes López para desmantelarlo, *no fue robar en su residencia. Segundo,* no es hasta pasadas varias horas desde que detuvieron a Deynes López y lo trasladaran al hogar de uno de los acusados, *que deciden cometer otro delito e ir a su hogar para robarle.*([2])

Para hurtar el automóvil y desmantelarlo no era necesario privar a Deynes López de su libertad; tampoco tras-

---

([1]) Dijimos:

"... [N]os parece sabia y justa la *norma general que excluye como conducta constitutiva de secuestro aquella consistente en la sustracción incidental de la víctima con miras a la comisión de algún delito.* Resulta, en consecuencia, apropiado y conveniente su adopción en nuestra jurisdicción. Ahora bien, se impone la necesidad de delimitar en lo posible sus contornos y características, a la luz de las modalidades y tendencias antes examinadas." (Énfasis suplido.)

([2]) Así lo testificó Deynes López, al expresar que no es hasta que los policías se marchan de casa de uno de los acusados que "decidieron llevar el testigo a su casa". Sentencia, pág. 4. Este testimonio fue creído por el tribunal de instancia y, naturalmente, por este Foro.

ladarlo de un sitio a otro. Mucho menos era ello necesario para robar en su casa. En consecuencia, *los hechos ante nos revelan fehacientemente que la sustracción no fue incidental a la comisión del delito principal, por lo que se configuró el delito de secuestro.* Estos hechos constituyen el delito de secuestro separado y distinto a la intención o propósito primario de los acusados.

Una vez demostrado que la conducta constitutiva de secuestro no fue incidental, no es determinante el factor tiempo. Los tres (3) elementos adoptados en el caso *Pueblo v. Echevarría Rodríguez I,* supra, a saber: (1) el lugar donde se sustrajo a la víctima; (2) la distancia de la traslación, y (3) el período de duración de la restricción, *sólo* son de aplicación a manera de excepción y, como bien reconoce la mayoría, si la sustracción de la persona fue un acto incidental. Sentencia, págs. 10–11.